(No. 5921. July 14, 1933.)

MARK STEPHENS, Appellant, v. ALMA STEPHENS, Respondent.

[24 Pac. (2d) 52.]

Leo McCarty and Hartley P. Kester, for Appellant.

Tannahill & Durham and Lincoln Shropshire, for Respondent.

430

WERNETTE, J.—Appellant and respondent were married in 1915, and as the fruits of the marriage they have two children, a boy, age ten years, living with his father, the appellant, at Lewiston, Idaho, and a girl, age six years, residing with her mother at Spokane, Washington. The parties acquired a small amount of real property, consisting of a house and lot, in Spokane.

Appellant, in paragraph 5 of his complaint for divorce, charges respondent with various acts of extreme cruelty, details being unnecessary, except as may be hereafter especially mentioned. He prays for an absolute divorce and custody of the two minor children.

In the answer, and amended cross-complaint, respondent denied the allegations charging extreme cruelty, and in paragraph 4 of her cross-complaint sets forth many and various acts of extreme cruelty and misconduct on the part of the

appellant, which need not here be specially enumerated, but which may be referred to later. Respondent also alleges, in said paragraph 4, that by reason of said acts of cruelty on the part of appellant it was impossible for her to live and reside with him; that they have been living separate and apart on account thereof.

In paragraph 6 of the cross-complaint respondent alleges, among other things, that appellant is an able-bodied man, a railroad engineer by occupation, capable of earning $250 a month; that by reason of his seniority rights he was able to have almost continuous employment; that by moving to the state of Idaho he thereby waived such seniority rights for the purpose of establishing such residence in order to obtain a divorce. Respondent prayed that the appellant be denied a divorce; that she be awarded the care and custody of the minor children, and be granted $125 a month permanent alimony or separate maintenance for the care and support of herself and the minor children. The material allegations of the cross-complaint, with regard to the acts of extreme cruelty and misconduct, and the allegations of paragraph 6, were denied by the answer to the cross-complaint.

On the issues thus framed the action was tried before the court, the court making findings of fact, conclusions of law, judgment and decree denying the divorce to said appellant, granting custody of the minor son to appellant and the custody of the minor daughter to respondent, and decreeing separate maintenance to respondent in the sum of $50 a month for her support and maintenance and that of the minor daughter. The court provided further that respondent is entitled to the use and occupancy of the house and lot, owned jointly by the parties, situated in Spokane, Washington, without molestation by appellant, and that the taxes and assessments and $600 mortgage on the property be paid by appellant. From this judgment and decree appellant has perfected this appeal.

While appellant makes numerous assignments of error, they may all be grouped so as to raise three distinct questions or propositions to be decided. First, was there suffi-

cient corroboration of the testimony of the appellant to entitle him to a decree of divorce? Second, was there sufficient evidence to justify the court in granting respondent a decree for separate maintenance? Third, did the court have jurisdiction to award the nonresident minor child to the respondent, and to award the use and occupany of the real property situated in the state of Washington to the respondent, and to compel the appellant to pay all taxes and assessments against the property and to pay off the mortgage on the said real property, which was located outside of the jurisdiction of the court?

The record, as a whole, discloses a very regrettable state of affairs, as between these unfortunate people. It is unnecessary to go into detail regarding the evidence concerning the charges and counter-charges of cruelty and misconduct, made by one as against the other. Suffice it to say that the appellant testified in support of the various charges of extreme cruelty he accused respondent with in his complaint, together with others not alleged. These were all denied by the respondent and she in turn testified in support of her charges in the cross-complaint, together with other acts of cruelty. She also testified in support of the allegations of paragraph 6 of her cross-complaint. All the contentions of cruelty made by the wife as to the husband were denied by him, also her testimony concerning the allegations of paragraph 6 of her cross-complaint. Besides the testimony of appellant and respondent there was very little testimony introduced by either of the parties.

The minor son, age ten years, was called as a witness on behalf of appellant. At the suggestion of the court the child was not placed under oath, but was asked questions by the attorneys for both parties. The material substance of his statements were to the effect that his father had not abused him or used excessive corporal punishment on him, as was claimed by respondent; that every time his father came home his mother and father quarreled; that he did not hear from his mother at any time since he had gone to Lewiston to live with his father; that he had serious trouble with his

mother, in that she beat him with stovewood practically every day for three years prior to the time he went to live with his father. Other than the minor son, no other witnesses testified on behalf of appellant in corroboration of his case. Only one additional witness testified on behalf of appellant, a Mrs. D. H. Sipes of Lewiston, regarding the care taken of the boy at Lewiston, but who knew nothing of the relations between the parties.

Respondent called a Mrs. Beatrice Roberts as her witness, who was at her home acting in the capacity of a nurse at the time appellant came there in response to a telegram, sent by respondent, informing him of the serious illness of the minor daughter. Appellant claiming that he came to Spokane immediately upon receipt of the telegram, arriving late in the evening, and that upon going to the home she refused to let him in the house; that she started quarreling with him and as a result he was not permitted to see or visit his seriously sick child. The wife claimed, however, that he came there late at night, after they had gone to bed, and immediately started cursing, swearing, threatening and abusing her so she feared for her safety, and consequently refused him entrance. Mrs. Roberts, in a large measure, corroborated respondent as to the particular incident, stating that she heard appellant ouside the house cursing, swearing and using all sorts of vile and vulgar language toward respondent, so she herself was much in fear and went to the neighbors for assistance. The balance of her testimony had only to do with the bad conditions of the house in Spokane, and the meager furnishings. Such is also true with regard to the testimony of Miss Lena Christenson, called on behalf of the respondent.

At the close of the case the court made certain remarks to the effect that there was no corroboration, as required by the statute, consequently he would not be justified in granting a divorce, as the law required absolute corroboration; further, that he was inclined to the view that probably much that appellant said was justified, but that very little, if any,

credence could be given to the testimony of the boy. Ultimately, however, the court made findings of fact, as follows:

"V.

"That the allegations contained in Paragraph V of Plaintiff's complaint are untrue and are not supported by evidence."

All of the acts of extreme cruelty of which appellant charged respondent were set forth in paragraph 5, of appellant's complaint. The court further found:

"VI.

"That the allegations contained in Paragraph IV of the affirmative defense and cross-complaint of the defendant and cross-defendant, as set forth in her answer and Amended Cross-Complaint are true and are supported by evidence."

In paragraph 4 of respondent's cross-complaint she set forth all of the allegations of cruelty and misconduct on the part of appellant, of which she accused him.

The record discloses but a mass of conflicting testimony, charges and counter-charges and denials. Regardless of whether there is sufficient corroboration, as is claimed by appellant and which will later be considered, where the evidence is conflicting and there is substantial evidence to support the findings of the court, the appellate court will not disturb such findings. This has been the uniform holding of this court, and citation of authorities is deemed unnecessary. In this case there is ample evidence to support the findings and therefore the same will not be disturbed.

Section 31–703, Idaho Code Annotated, provides:

"No divorce can be granted upon the default of the defendant, or upon the uncorroborated statement, admission or testimony of the parties, or upon any statement or finding of fact made by a referee; but the court must, in addition to any statement or finding of the referee, require proof of the facts alleged, and such proof, if not taken before the court, must be upon written questions and answers."

The statute does not specifically designate the extent of the corroboration required, consequently no definite rule, as to the degree of corroboration necessary, can be promul-

gated, or laid down, and the decision in each case must be according to its own facts and circumstances. (*Bell v. Bell,* 15 Ida. 7, 96 Pac. 196; *De Cloedt v. De Cloedt,* 24 Ida. 277, 133 Pac. 664; *Donaldson v. Donaldson,* 31 Ida. 180, 170 Pac. 94.)

Admissions or confessions by a defendant in a divorce action are admissible in evidence, but are not considered corroborating evidence of the testimony of the plaintiff. But where it is evident from the whole record that there is no collusion between the parties, slight evidence in corroboration of that of the plaintiff, aside from the admissions of the defendant, is sufficient to meet the requirements of the statute. (*Piatt v. Piatt,* 32 Ida. 407, 184 Pac. 470; *Olson v. Olson,* 47 Ida. 374, 276 Pac. 34.)

From the remarks made by the court at the close of the case it appears that the judge came to the conclusion that there was no substantial evidence corroborating that of appellant. In that, we find the court was correct. There is no evidence, whatever, indicating collusion between the parties. That being true, a slight amount of corroborating evidence would have been sufficient to justify the court in granting plaintiff a divorce had the court found that the testimony of the appellant, regarding the acts of extreme cruelty alleged in the complaint, was true.

The minor son was called to the witness-stand and we have heretofore stated what his testimony consisted of. By reason of the age of the child, and the nature of the statements made by him, the court gave very little, if any, credence to his testimony. Courts are justified in being very cautious in scrutinizing the testimony of children of tender years.

Even assuming that the father and mother quarreled every time the father came home, as stated by the boy, it is not indicated what the quarrels were about, or who started the quarrels. Certainly if the appellant started, or was the direct cause of the quarrels, he cannot be heard to complain. In order to have the quarrels as a ground for divorce it would have been necessary for respondent to have started

or caused them, but as to this fact the court found in respondent's favor. Nor can we see how, in any manner, the telegram in question, or the pleadings in the separate maintenance action, instituted in Spokane, Washington, by the respondent, can be considered as corroborative evidence. At best they are but statements in writing, made by one of the parties, and introduced in evidence by the other party. Consequently, even though the court had found that the charges in the complaint of appellant were true, yet there was no corroboration of appellant's testimony, so the court would not have been justified, under the statute, in granting a divorce.

■ We shall now consider the second proposition advanced by appellant, as to whether the court erred in decreeing separate maintenance to the wife. This court in the case of *Simonton v. Simonton*, 33 Ida. 255, 193 Pac. 386, made the following statement:

"Courts of equity have inherent jurisdiction to award separate maintenance for the support of the wife and minor children independent of any action for divorce and independent of any statutory provision."

See, also, *Vollmer v. Vollmer*, 47 Ida. 135, 273 Pac. 1.

■ It must be kept in mind that the court specifically found that the wife was innocent of any wrongdoing, and was not at fault, but that the fault lay with the husband. The court having found that the husband, appellant, was guilty of the charges of which the wife accused him, she was not under any duty or obligation to live with him or move to Idaho when he changed his residence from Spokane, Washington, to Lewiston, Idaho. Yet, the husband was still under obligation to support his wife and children. Where a court of equity finds that it is impossible for the parties to any longer reside together, a decree for separate maintenance may be granted. (*Earle v. Earle*, 27 Neb. 277, 43 N. W. 118, 20 Am. St. 667.) While under statute it is necessary to have corroboration before a divorce may be granted, no corroboration is required in order to provide separate maintenance. (*Mattson v. Mattson*, 181 Cal. 44,

183 Pac. 443.) The authorities cited by appellant are not in point. They are cited in support of a statement of facts, with reference to the instant case, which the court specifically found did not exist, but to the contrary. The court did not err in granting separate maintenance.

 The next question to be considered is, did the court have jurisdiction to award the nonresident minor daughter to respondent?

Appellant's domicile was in the state of Idaho. Ordinarily the domicile of the wife and minor children is that of the husband, as the law gives the right to the husband to decide where the home of the family is, except where the husband is guilty of such acts as will excuse the wife of longer living with the husband. Then she has the right to establish her own residence and domicile, and if any of the minor children live with her, then her residence and domicile is also the residence and domicile of the minor children living with her. In the instant case the residence and domicile of the wife and minor daughter was Spokane, Washington, as she was not required, by reason of the acts of the husband found to be true by the court, to come to Idaho and live with him. However, he having instituted this action in Idaho praying for the custody of both of the minor children, respondent voluntarily came to Idaho and submitted herself to the jurisdiction of the Idaho court, also praying that she be awarded the custody of both of the minor children. Formally the child was not a party to the action. She was before the court because of the fact that her parents were in court, and both parents voluntarily submitted to the court, who, as between the parents, should have custody and control. In the case of *Anderson v. Anderson*, 74 W. Va. 124, 81 S. E. 706, the court laid down the following rule:

"That the children may not have been within the jurisdiction of the court at the time of the institution of the suit or entry of the decree is immaterial since the parties litigant were the father and mother and the cause of action, the right of the custody in so far as it affected the children was

between them, and the court had just jurisdiction over them with the power to render a personal decree."

See, also, *State v. Rhodes,* 29 Wash. 61, 69 Pac. 389; *Payton v. Payton,* 29 N. M. 618, 225 Pac. 576; *Power v. Power,* 65 N. J. Eq. 93, 55 Atl. 111.

The appellant cites the case of *Duryea v. Duryea,* 46 Ida. 512, 269 Pac. 987, in support of his contention. We believe that case is readily distinguishable from the instant case. In the Duryea case the husband and children were domiciled in Idaho. The wife was residing in the state of Nevada, and instituted divorce proceedings in Nevada, praying for custody of the children. The husband did not voluntarily appear in the action commenced in Nevada, but his wife caused criminal proceedings to be instituted in Nevada causing the husband to be arrested in Idaho and by force, and contrary to his will, he was taken to the state of Nevada, where personal service was then obtained upon him in the divorce action instituted there. Prior to his being taken to the state of Nevada the husband instituted an action for divorce in the state of Idaho, and in such action an order was entered placing the children in the custody of a third person in Idaho, pending its outcome. In the Nevada divorce action the husband strenuously resisted the divorce and the granting of the custody of the children to the wife, setting forth that the children were not within the jurisdiction of the Nevada courts; that in fact they were in the jurisdiction of the Idaho court and actually in its custody. Had the husband Duryea gone to the state of Nevada voluntarily and submitted to the jurisdiction of the Nevada court, and voluntarily litigated the question as to whether the husband or the wife should have the custody of the children, as in the instant case, 'and the Nevada court had granted the custody of the children to the wife, and an action had not been pending in Idaho, undoubtedly this court would have held that the Nevada court had jurisdiction relative to the custody of the children.

While there is some conflict in the authorities, we believe that the better reasoning and the weight of authority is

that the court had jurisdiction to award the custody of the minor daughter to respondent, and we so hold.

The remaining question for determination is as to whether the court had jurisdiction to enter a decree giving respondent the right of possession and occupancy of the real property in the state of Washington; requiring of appellant that he pay the taxes and assessments against the property and liquidate the mortgage against it.

It must be borne in mind that the court did not decree the title to the property to respondent, but only gave to her the right to its use and occupancy. The rule of law is well stated in the case of *Vineyard Land & Stock Co. v. Twin Falls S. R. L. & W. Co.*, 245 Fed. 9, wherein a large number of cases are cited. In that case the court said:

" . . . . While a court of equity may in a proper case compel a party to act in relation to property not within its jurisdiction, its decree does not operate directly upon the property, nor affect the title, but is made effectual through the coercion of the defendant. That is to say, the *rem* may not be affected by the direct operation of the decree where it is beyond the territorial jurisdiction of the court, but the court may, acting *in personam*, coerce action respecting it."

The same rule of law has been stated in *Coulthard v. Davis*, 151 Iowa, 578, 131 N. W. 1088, and *Union Trust Co. v. Olmstead*, 102 N. Y. 729, 7 N. E. 822.

In this case both parties being in court, having submitted themselves to its jurisdiction, it had the jurisdiction and the power to enforce its decree as against the parties, and enforce its mandate by coercion if necessary. Consequently the court did not err in awarding the use and occupancy of the property to respondent and directing certain payments to be made by appellant.

There being no error, the judgment and decree of the court is affirmed.

Budge, C. J., and Givens, Morgan and Holden, JJ., concur.