PHILLIP L. DAUGHERTY, PETITIONER, v. MRS. J. V. NELSON, RESPONDENT.—234 S. W. 2d 353.

Kansas City Court of Appeals. Opinion delivered November 20, 1950.

*Southall & Southall* for petitioner.

126

BOUR, C.—This is an original proceeding in habeas corpus, wherein the petitioner, Phillip L. Daugherty, seeks to obtain the custody of his two minor children, Darline Leona Daugherty and James Earl Daugherty. The respondent is Mrs. J. V. Nelson, the children's maternal great-aunt. The matters upon which petitioner and respondent join issue appear from respondent's return and petitioner's answer thereto.

In the return respondent states that she has custody and control of said children by virtue of (1) a decree of the district court of Douglas County, Nebraska, dated December 10, 1948, whereby the children's mother was granted a divorce from petitioner and awarded custody of the children in question, and (2) letters of guardianship and curatorship granted to respondent by the probate court of Howard County, Missouri on August 18, 1949, "for the reason that said children had been abandoned by petitioner herein"; and that she has control of said children (3) for the further reason that "she

was given the General Power of Attorney over said children on the 13th day of August, 1946, by Hortense Daugherty, the mother of said children.'' Respondent further states that petitioner is an unfit person to have custody of said children; that he is an habitual drunkard; that James Earl Daugherty, one of the children here involved, is crippled and in bad health and has been under the care of doctors at Mercy Hospital in Kansas City, Missouri for several years; that respondent is a fit person and the great-aunt of said children and has made regular trips to Mercy Hospital with the boy, James; that she has kept said children in school, educating and protecting them; and that she has not refused to permit the petitioner to see his children except on occasions when he came to her home under the influence of intoxicating liquor and created a disturbance. For further return respondent alleges that this court is without jurisdiction to determine the rights of the parties in this habeas corpus proceeding as the district court of Douglas County, Nebraska ''has the original jurisdiction and is the proper forum to modify this decree and determine the care and custody and the welfare of said minor children.''

In his answer to the return, petitioner admits that his former wife was granted a divorce and custody of said children by the district court of Douglas County, Nebraska on December 10, 1948, but alleges that said court was without jurisdiction to determine the custody of his children because they ''were prior to that time, at that time, and afterwards, bona fide residents of the State of Missouri, and were not domiciled in the said State of Nebraska.'' The answer states that petitioner neither admits nor denies that respondent has custody of the children by virtue of letters of guardianship and curatorship issued to her by the probate court of Howard County, Missouri on August 18, 1949 ''the petitioner having no notice of nor knowledge of any such proceeding and he requires strict proof thereof''; that if said probate court made such an order it was in violation of his rights as father and natural guardian of the children after they had been abandoned by their mother; that if such an order was made by the probate court, without ten days' notice to petitioner and without a finding that he was an unfit person to have custody of the children, such order is a violation of sec. 378, R. S. Mo. 1939, and is therefore null and void; that petitioner neither admits nor denies that respondent was given ''a general Power of Attorney over said children on the 13th day of August 1946,'' but alleges that if she was given such a power of attorney it is without legal force and in fraud of the paternal rights of petitioner. The answer denies that petitioner abandoned the children and avers that he has supported them from the time their mother left him in September, 1948, or thereabouts, and ''has many times demanded custody of said children from respondent''; and it denies

that petitioner is an unfit person to have custody of the children, that he is an habitual drunkard, and that respondent is a fit person and is caring properly for the health and welfare of the children. It is alleged that respondent lives in the country, five miles from Fayette, Missouri; that she has no modern conveniences; that his son James has to be treated in Kansas City, Missouri and would receive better, more frequent, and less expensive treatment by reason of being domiciled in Kansas City, Missouri. The answer also denies that this court is without jurisdiction to determine the rights of the parties in this habeas corpus proceeding, and states that this court has such jurisdiction, the said children being domiciled within the jurisdiction of this court and the alleged custody award of said Nebraska court being based on fraud and misrepresentation as to the future plans for the care of the children.

Petitioner prays "that custody and control be wrested from the respondent who wrongfully and illegally retains it and be given to this petitioner * * *; in the alternative, petitioner prays the court that a suitable person be appointed to care for said children and that such person be ordered to permit him to see said children, exercise the rights of a father over them and to set a reasonable amount that he shall contribute to their support."

The evidence discloses that petitioner and Hortense M. Daugherty were married in Nebraska on December 4, 1936, and that two children were born of the marriage, namely, Darline Leona Daugherty, born October 25, 1937, and James Earl Daugherty, born September 18, 1943. Sometime prior to April, 1943, petitioner and his family moved to Kansas City, where petitioner has been domiciled since that time. In May, 1945, or thereabouts, petitioner and his wife placed their children in the home and under the care of respondent who has been living with her husband on a farm in Howard County, Missouri since 1941. The children have lived with respondent most of the time since 1945 and, except as hereinafter stated, they have been in respondent's home continuously since September, 1946. The evidence tends to show that after petitioner and his wife moved to Kansas City there were times when they did not live together, but the testimony concerning these separations, if such they were, is vague and confusing. However, the evidence shows that sometime in 1948 petitioner's wife left Missouri and went to Nebraska, but the children remained with respondent in Howard County, Missouri; that the wife filed suit for divorce and custody of the children in the district court of Douglas County, Nebraska. In November, 1948, summons in that action was served on petitioner in Kansas City, Missouri where he remained after the separation, but he did not appear in the action, and on December 10, 1948, by a decree of the Nebraska court, the wife was granted a divorce and custody of the children.

Mrs. Hortense Keller, the petitioner's former wife and the mother of the children in question, testified as a witness for respondent. She stated that at her request respondent took the children to Omaha, Nebraska about a week before the above mentioned decree was rendered and that respondent and the children were in the courtroom at the time of the hearing. She denied that she testified at the hearing that the children had been living with her in Nebraska, and stated that she told the judge the children had been living with respondent in Missouri and requested permission to place them in the home and under the care of respondent. According to the mother's testimony such permission was granted by the Nebraska court and respondent took the children back to her home in Missouri a few days after the hearing. She said the children had lived with respondent since that time, but that after they returned to Missouri, respondent and the children spent several week-ends with her in Omaha; that she left Nebraska in the spring of 1949 and afterwards remarried; and that she resided with her second husband in the state of California. This testimony was corroborated by that of respondent. Petitioner testified that if the children were in Nebraska at the time the divorce case was heard or at any other time after their mother went to Nebraska, they were there without his consent or knowledge.

At the outset we are confronted with the question of whether this court has jurisdiction to determine the custody of the children in question. Respondent's theory is that the Nebraska decree gave the mother custody and control of the children and the right to place them in the home of respondent in Missouri; that the decree is conclusive as to petitioner's right to custody and, therefore, that this court is without jurisdiction to determine the custody of the children in the habeas corpus proceeding. Petitioner contends that the Nebraska court was without jurisdiction to make the custody award as the children were not domiciled in or residents of Nebraska at the time the decree was rendered, but domiciled and residing in Missouri; that the children are now domiciled and residing within the jurisdiction of this court and, therefore, that this court has jurisdiction to make a custody award in this proceeding.

Ordinarily divorce proceedings take place at the domicile of the parties which is apt to be both the domicile of the children and the place where they reside. In such cases there is, of course, no question as to the validity of a judicial award of custody, for the domicile of the parents confers jurisdiction over their status and over the status of the child, as well as over the persons of the parents and the children. Stumberg, Conflict of Laws (1937), p. 297. But when one or more of these elements is lacking, the jurisdictional problem becomes a difficult one. Several theories have been developed to determine the correct basis of jurisdiction to award custody of a minor child, and as a consequence the cases dealing with this ques-

tion are in considerable confusion. See 20 A.L.R. 815; 72 A.L.R. 441; 116 A.L.R. 1299; 160 A. L. R. 400; 4 A.L.R. 2d 7; 9 A.L.R. 2d 434; 27 C.J.S. sec. 303, p. 1163. In many instances the problem is complicated by the fact that it is difficult to determine where the child may be considered to have his domicile. Nearly all cases hold that the state of the child's domicile has jurisdiction to make an award of custody even though the child is without the state. It was so held in Beckmann v. Beckmann, en Banc, 358 Mo. 1029, 218 S. W. 2d 566, affirming 211 S. W. 2d 536. See 9 A. L. R. 2d 434, 439. However, one theory which has been adopted by the Restatement and several leading text writers is that the state of the child's domicile is the *only* one which has jurisdiction to award custody. Restatement, Conflict of Laws, secs. 117, 145-148; 2 Beale, Conflict of Laws, sec. 144.3, p. 717; Goodrich, Conflict of Laws (1927), sec. 132, p. 358; 4 A. L. R. 2d 7, 14; 9 A.L.R. 2d 434, 439. The basis for this theory is that a custody award affects the status of the child and status is a matter within the control of the state where the child is domiciled. The decision in the Beckmann case, supra, is expressly based on this theory.

Applying the above mentioned theory in the instant case, we are of the opinion that the Nebraska court was without jurisdiction to make the custody award of December 10, 1948, since the children were domiciled in Missouri at the time. The authenticated copy of the Nebraska decree, introduced in evidence, shows that by the decree the plaintiff-mother was awarded exclusive custody of the children and that the court not only found that the mother was a resident of Omaha, Nebraska but "that said children are now living with the plaintiff." However, a judgment of another state may be collaterally attacked on the ground of lack of jurisdiction even though it appears in the judgment record that the court had jurisdiction and extrinsic evidence is necessary to establish its invalidity. Leichty v. Kansas City Bridge Co., 354 Mo. 629, 190 S. W. 2d 201. Petitioner does not deny that the mother established a separate domicile in Nebraska. As to the domicile of the children, the general rule is that an infant has the same domicile as that of its father regardless of where the infant may live. But in many states, including Missouri, the statutes give the parents equal rights as to the custody and control of their children. See sec. 375, R. S. 1939, Mo. R.S.A.; sec. 38-107, R. S. Neb. 1943. Where that is the case, if the parents have separate domiciles, a child takes the domicile of the parent *with whom it lives in fact*. Beckmann v. Beckmann, supra; Restatement, Conflict of Laws, secs. 30, 32; 1 Beale, Conflict of Laws, sec. 32.2; 53 A.L.R. 1160. It is stated generally that if the child lives with neither parent, its domicile is that of the father. Restatement, supra, sec. 32. "Live" means "to make one's abiding place or home; to dwell; reside." Webster's New International

Dictionary (2d) p. 1445. Now the mother testified that at her request the respondent took the children to Omaha, Nebraska about a week before the divorce hearing; that the children were in the courtroom at the time of the hearing; that she told the judge the children had been living with respondent in Missouri; that she requested permission to place the children in respondent's home; that such permission was granted, and respondent took the children back to Missouri a few days after the hearing. The authenticated copy of the decree does not show that the Nebraska court authorized the mother to place the children in the care of respondent. It also appears that the mother executed an instrument and acknowledged the execution thereof before a notary public on August 11, 1949, which was eight months after she obtained the Nebraska decree. This instrument was offered in evidence by respondent and it is set forth below in connection with the discussion of the guardianship proceeding in the probate court of Howard County, Missouri. It reads in part as follows: "The children have resided in the home of Mrs. Ethel Nelson (respondent herein) for years where they now are." There can be no doubt that the children were domiciled in Missouri when the mother sent for them, since the domicile of the father was in this state, and they were living here. The foregoing evidence does not show that the children lived with their mother, abided with her, and resided with her in Nebraska, with the intention on her part to keep them there, to the exclusion of their Missouri residence. On the contrary, it is evident that the children were brought into Nebraska after the suit was filed for the sole purpose of conferring jurisdiction over the question of custody. In our opinion the fact that they were with their mother a few days, and in the courtroom during the trial, was not sufficient to fix their domicile with the mother. They were not living with her "in fact." It follows, according to the domicile theory of jurisdiction, that the Nebraska court was without jurisdiction to make the custody award in question.

While the Missouri decision in the Beckmann case, supra, is based on the domicile theory, it cannot be stated with certainty that our Supreme Court has made an exclusive choice between the theories which have been developed to determine the basis for jurisdiction in such cases. For this reason we will consider briefly the other views. Another theory is that jurisdiction over the persons of the parents is sufficient to give the court jurisdiction to award custody of their child, regardless of the domicile or residence of the child. The underlying idea is that custody proceedings are in personam for the purpose of fixing the reciprocal rights of the parents with respect to the child. See Stephens v. Stephens, 53 Idaho, 427, 24 P. 2d 52; Wear v. Wear, 130 Kan. 205, 285 P. 606, 72 A.L.R. 425; 4 A.L.R. 2d 7, 14: 9 A.L.R. 2d 434, 440. See also Laumeier

v. Laumeier, 308 Mo. 201, 271 S. W. 481. The Nebraska court did not have in personam jurisdiction over both parents as the summons was served on the father in Kansas City, Missouri, where he was domiciled, and he did not appear in the action. A third theory is that mere residence of the child within the state is sufficient to give a court of the state jurisdiction to make a custody award. Thus, if the child is actually living in one state but domiciled in. another, a court of the former state has jurisdiction to make such an award. This on the ground that a court in making a custody award is acting on behalf of the state as parens patriae and, therefore, that the court of the state where the child actually resides is best qualified to determine what is for the best interests of the child. See Finlay v. Finlay, 240 N. Y. 429, 148 N. E. 624; Re Kernan, 247 App. Div. 664, 288 N.Y.S. 329 (aff. 272 N. Y. 560, 4 N. E. 2d 737); Schmidt v. Schmidt, 280 Mass. 216, 182 N. E. 374; Kenner v. Kenner, 139 Tenn. 211, 201 S. W. 779 (reh. denied, 139 Tenn. 700, 202 S. W. 723); 4 A.L.R. 2d 7, 13, 16, 41, 64. Applying this theory the Nebraska court was without jurisdiction for, as we have shown, the children were not residing in that state at the time. It should be pointed out, however, that if the children had been living with their mother, then Nebraska would have been the state of their domicile as well as that of their residence, according to the rule stated in the Beckmann case. It should also be noted that in most of the cases which stress either the second or the third theory, the court had jurisdiction in personam over both parents, and the child was actually living in the state although domiciled elsewhere. When that is the case, it is apparent that either of the last mentioned theories is applicable.

It has been held that a court has power to award custody of a child who is within the state but domiciled elsewhere, even though the child has been abducted from the state of his domicile and is wrongfully detained in the state of the forum. In some of these cases the child was removed from the state of his domicile and taken to the state of the forum in violation of a custody decree of the domiciliary state. See McMillin v. McMillin, 114 Colo. 247, 158 P. 2d 444, 160 A.L.R. 396; People ex rel. Wagner v. Torrence, 94 Colo. 47, 27 P. 2d 1038; Di Giorgio v. Di Giorgio, 153 Fla. 24, 13 So. 2d 596; Helton v. Crawley (Iowa), 41 N. W. 2d 60; Ex parte Peddicord, 269 Mich. 142, 256 N. W. 833; Sheehy v. Sheehy, 88 N. H. 223, 186 Atl. 1, 107 A.L.R. 635; White v. White, 77 N. H. 26, 86 Atl. 353; Goldsmith v. Salkey, 131 Tex. 139, 112 S. W. 2d 165; Wicks v. Cox (Tex.), 208 S. W. 2d 876. Respondent's counsel relies upon the case of Goldsmith v. Salkey, supra. In such cases it is often said that the mere physical presence of a child within the state is sufficient to give the court jurisdiction to award custody of the child, notwithstanding its residence or domicile elsewhere. Thus, in

Helton v. Crawley, supra, the court said (41 N.W. 2d l.c. 73) : "* * * all that is necessary is the *presence* of the infants in the State—*that they are within its borders.*" And in Sheehy v. Sheehy, supra, it was said (186 Atl. l. c. 3) : "Furthermore, since the welfare of the child is the controlling consideration and since it is not chargeable with its parent's misconduct, this jurisdiction will be exercised even though the child was brought to this state by its parent fraudulently, and for the purpose of conferring jurisdiction over the question of custody, provided, however, that the child is, as in this case, too young to decide what is best for its own welfare." Despite such broad language, these cases are in the main distinguishable from the present case. It appears that the exercise of jurisdiction in such cases was not based solely upon the mere physical presence of the child within the state at the time of the trial. In most of them, including the Helton and Sheehy cases, supra, the court had in personam jurisdiction over both parents, and the child was before the court; the non-resident parent instituted the proceeding and invoked the jurisdiction of the court; and the child was actually living in the state with the other parent when the proceeding was instituted. In the Nebraska proceeding in question here, the court did not have in personam jurisdiction over the father, and the children were not actually living with their mother when she instituted the divorce action or at any time thereafter. Whether or not the cases referred to in this paragraph would be followed in Missouri, it is clear that they are not in point here. Furthermore, there are many cases taking a contrary view. See 4 A.L.R. 2d 7, 22, 47. Cf. Re Hubbard, 82 N. Y. 90, where the child was brought into the state a few days before the proceeding. Of course, any neglected child may be protected even against a parent, irrespective of residence or domicile; but such procedure is a police measure and does not work a change in the parent-child relation. Goodrich, Conflict of Laws, sec. 132, p. 358.

We conclude that the Nebraska court did not have jurisdiction, upon any recognized theory, to make a custody award in the divorce action that would be binding in other states under the full faith and credit clause of the federal constitution. See Halvey v. Halvey, 330 U. S. 610, 67 S. Ct. 903, 91 L. Ed. 793. The facts in the case of Hanson v. Hanson, 150 Neb. 337, 34 N. W. 2d 388, are similar to those in the instant case. Since the decision in that case seems to be based on the theory that the state of the child's domicile is the only one which has jurisdiction to award custody, it is doubtful at least whether the Supreme Court of Nebraska would recognize the award here involved as valid. A judgment of a sister state is entitled to no greater effect than is accorded to it in the state where rendered. Halvey v. Halvey, supra; 50 C.J.S. sec. 889, p. 473. Even in the face of a valid existing custody decree rendered by a court of a

sister state, a court may, in a proper proceeding, make an award of custody provided changed conditions are shown to exist that in the interest of the child's welfare justify an award changing the child's legal custody, at least where the law of the state in which the decree was rendered permits the matter of the custody of the child to be reconsidered in the light of changed conditions. Halvey v. Halvey, supra; Re Leete, 205 Mo. App. 225, 223 S. W. 962; 20 A.L.R. 815; 72 A.L.R. 441; 116 A.L.R. 1299; 160 A.L.R. 400; 27 C.J.S. sec. 329, p. 1283. In Nebraska such a decree is always subject to modification on account of changed conditions. Section 42-312, R. S. Neb. 1943. So much for the Nebraska decree.

Respondent alleges in her return that she has custody and control of the children for the further reason that she was appointed guardian of the children by the probate court of Howard County, Missouri on August 18, 1949. It appears that the children's mother signed an instrument and acknowledged the execution thereof before a notary public of the state of California on August 11, 1949. This instrument was executed after the mother obtained the Nebraska decree but before she remarried. It reads as follows: "I, Hortense Daugherty Neice to Mrs. Ethel Nelson, Fayette, Missouri wish it be known I want her to be guardian and have full custody of my two minor children: Darline L. Daugherty and James E. Daugherty. I also give her full power of attorney to transact any and all business pertaining to their support, health and general care, in any way or form she sees fit. The children have resided in the home of Mrs. Ethel Nelson for years where they now are." The mother and respondent testified that the instrument was presented to the probate court of Howard County, Missouri, whereupon that court granted letters of guardianship and curatorship to respondent. The mother testified that she lived in California at the time and that her purpose in requesting the probate court to make the appointment was to enable respondent to obtain state aid for the children, such as medical treatment and educational benefits. The letters, dated August 18, 1949, read in part as follows: "Whereas Darline L. Daugherty and James E. Daugherty, minors and residents of Howard County, Missouri, and said minors have no guardian * * * We do hereby appoint Mrs. Ethel Nelson as guardian of the person and estate of said Darline L. Daugherty and James E. Daugherty." The record of the probate court was not offered in evidence nor was any entry from that court offered at the hearing. Respondent simply introduced the instrument dated August 11, 1949 and a certified copy of the letters of guardianship and curatorship. The undisputed evidence shows that petitioner was working and living in Kansas City, Missouri when respondent was appointed guardian. Petitioner testified, without objection, that he had no notice of the proceeding in the probate court and did not appear or participate therein; and that he first

heard of the proceeding in June, 1950. Respondent offered no evidence to the contrary; indeed, respondent made no claim at the hearing before us, or in the suggestions filed herein, that petitioner had notice of the probate proceeding or that he had any knowledge of the same prior to June, 1950.

Petitioner contends that respondent's appointment as guardian is void since it was made without ten days' notice to him and without a finding that he was an unfit person to have custody of the children, citing Section 378, R. S. 1939, Mo. R.S.A. Section 375, R. S. 1939, Mo. R.S.A., provides: ''In all cases not otherwise provided for by law, the father and mother, with equal powers, rights and duties, while living **** shall be the natural guardian and curator of their children, and have the custody and care of their persons, education and estates ****.'' However, the statutes authorize the probate courts to appoint guardians for minors in given instances. Section 378, supra, is confined to cases where a minor under the age of fourteen ''has no parent living, or the parents be adjudged incompetent or unfit for the duties of guardianship.'' In the latter cases ''unfitness or incompetency of parents, after ten days' notice to the parents, shall be decided in the probate court by the judge thereof, or by a jury, if one be demanded.'' No notice is required to be given to anyone in cases where a minor under the age of fourteen has no parent living, for the obvious reason that no adverse interest is involved in the adjudication. Children under the age of fourteen are regarded as incompetent to choose their own guardians; hence notice to such a minor is not required. Cf. Secs. 382, 383, 384, R. S. 1939, Mo. R.S.A. The children here involved were under the age of fourteen at the time of the probate proceeding and are still under that age. The letters of guardianship granted to respondent recite that ''said minors have no guardian''; but the parents of the children were, of course, alive at the time. Section 378, supra, makes it quite clear that petitioner's rights as natural and statutory guardian of his minor children could not be cut off by the appointment of another as guardian, without ten days' notice to him and an adjudication of his fitness and competency to discharge the duties of a guardian. It has been held that a parent cannot be deprived of the right of custody of a minor child in a guardianship proceeding without notice and an opportunity to be heard, even though the statute authorizing the removal of the parent as a natural guardian does not expressly provide for notice and a hearing, for such notice is required by the due process clause in both state and federal constitutions. Bioni v. Haselton, 99 Vt. 453, 134 Atl. 606; Sinquefield v. Valentine, 159 Miss. 144, 132 So. 81; 76 A.L.R. 242; 39 C.J.S. sec. 23, p. 39. See also Child Saving Institute v. Knobel, en Banc, 327 Mo. 576, 122 S. W. 2d 905; Jack v. Jack, 295 Mo. 128, 243 S. W. 314. Since petitioner had no notice of the probate proceeding and did not appear

therein, we hold that the judgment of the probate court is void so far as it purports to appoint respondent guardian of the persons of petitioner's children.

However, the question remains as to whether the validity of respondent's appointment as guardian may be attacked by petitioner in this habeas corpus proceeding. This question must be answered in the affirmative, for petitioner was a stranger to the proceeding in the probate court. In State ex rel. Renner v. Alford, supra, where the mother instituted a habeas corpus proceeding to obtain the custody of a minor child, it was held that she could collaterally attack an adoption judgment which was rendered without her consent and without actual or constructive notice to her. Referring to sections 1457 and 1460, R. S. 1929 (now sections 1621 and 1624, R. S. 1939, Mo. R.S.A.), the court said (122 S. W. 2d l. c. 906): ''Those sections provide that the legality of the judgment of another court cannot be inquired into in a habeas corpus action. In. the instant case if the purported adoption judgment was rendered without the written consent of the mother and without actual or constructive service on her, it would not be a judgment and its legality as such could not arise.'' And in Child Saving Institute v. Knobel, supra, where it was held that a judgment of adoption rendered without notice to or consent of the legal custodian of the child is void and may be collaterally attacked by means of a writ of habeas corpus, the Supreme Court, en Banc, said (137 S. W. 2d l. c. 926): The general rule that a judgment of a court of competent jurisdiction is binding until it is reversed, and that another court cannot, by means of a writ of habeas corpus, look beyond a judgment and re-examine the proceedings on which it is based, applies only to parties and privies to such judgment.'' See also Fernbaugh v. Clark, 326 Mo. App. 1200, 163 S. W. 2d 999.

We are not here concerned with that part of the judgment of the probate court which, likewise without any notice to petitioner, purports to appoint generally another person as curator of the estate of petitioner's children. We are confined to the consideration of that part of the judgment only which pertains to the custody of the persons of petitioner's children, the appointment of a guardian.

It follows from what we have said that neither the Nebraska decree nor the judgment of the probate court of Howard County, Missouri is a bar to this action. The petitioner, the respondent, and the children are domiciled in this state and residing within the territorial jurisdiction of this court. The court has in personam jurisdiction over all the necessary parties. There is nothing lacking for the complete jurisdiction of this court and a valid judgment. We come then to the merits of the case.

It may be said in passing that it is alleged in respondent's return, but with no serious conviction we are sure, that she has control over

the children by virtue of a power of attorney executed by their mother more than two years before she obtained the Nebraska decree. This instrument did not purport to give respondent the legal custody and control of the children; it merely authorized her to conduct all of the mother's affairs relative to the care of the children; to sign any papers which the mother might be required to sign for the purpose of having the children admitted to a hospital; to perform any act required of the mother "to obtain relief or aid" that might benefit the children; and to perform other acts of a similar nature. Furthermore, there is no law in this state giving one parent the right to deprive the other of his or her parental rights. See sec. 375, R. S. 1939, Mo. R.S.A.

A proceeding in habeas corpus involving the custody of a minor child is of an equitable nature; and in a proceeding presenting the situation of the case at bar, the court is not bound to award the custody to any particular person but will, in the exercise of its discretion, make such award as the welfare of the child may seem to require. Ex parte Badger, 286 Mo. 139, 226 S. W. 936; 14 A.L.R. 286; Ex parte De Castro, 238 Mo. App. 1011, 190 S. W. 2d 949; Seat v. Seat (Mo. App.), 227 S. W. 2d 758. As indicated in the first part of this opinion, the pleadings filed by the respective parties put in issue the matter of petitioner's personal fitness in relation to the question of the welfare of the children. Cf. Rochford v. Bailey, 322 Mo. 1155, 17 S. W. 2d 941; State ex rel. Renner v. Alford, supra; and Ex parte De Castro, supra.

Touching this matter, petitioner testified that he was employed by the Kansas City Terminal Railway Company in April, 1943, and worked for that company in Kansas City, Missouri until he was inducted into the army in 1945; that he received an honorable discharge after being in the army about five months; that thereafter he was a patient in a veterans hospital for a time; that he had been employed by the Terminal Railway Company in Kansas City, Missouri since December, 1946; that he worked on a "night shift" at the Union Station and earned $200 a month; that prior to April, 1950, he paid respondent "about" $100 a month for the support of the children, except during the period he was in the army; that he stopped the monthly payments in April, 1950 because respondent would not permit the children to visit him in Kansas City, but paid her $200 in June, 1950; and that his government allotment was sent to respondent while he was in the service. The evidence tends to show that in 1947 petitioner paid for certain articles of clothing for the children and that in 1949 he sent them money with which to buy respondent a birthday present. In December, 1948, he sent $10.00 to the children to be used as "Christmas money." On November 26, 1948, he paid $12.00 to Dr. K. E. Thayer for professional services rendered his son. There is no evidence to show that petitioner has contributed anything to the support of his children since June, 1950.

Petitioner further testified that after the children were placed in respondent's home he visited them once a year and often wrote to his daughter; that he did not visit them oftener because respondent made him feel he was not welcome; that he had demanded custody of the children, but respondent refused to let him take them to his home; that the last time he went to visit the children was in June, 1950; that he was not intoxicated and had not been drinking, but respondent said he could not see the children because they were under the control of the probate court of Howard County. As hereinafter stated, respondent's version of this incident is different from that of petitioner.

Petitioner stated that his mother, Mrs. Ditch, lives with him in Kansas City, Missouri; that his home is a modern six-room house located near a public school and a church; that he and his mother occupy the first floor of the house, the three rooms on the second floor being occupied by tenants; that it is his purpose, if given custody of the children, to devote both floors to his family, and that with the help of his mother he will keep the children in school and take the afflicted boy to Mercy Hospital for treatment. He admitted that he buys beer by the case and drinks intoxicating beverages at home and in taverns, but denied that he drinks excessively or that he ever visited the children while intoxicated. He said that his mother drinks intoxicating beverages occasionally. Petitioner admitted that respondent has been good to the children and has given them proper care and attention.

Mrs. Ditch, the petitioner's mother, testified that she is unemployed and lives with her son; that she has been married three times and has not seen her third husband since they separated in 1942; that she does not drink intoxicating beverages; that the petitioner does not drink in the home; that he works steadily and has not missed a night's work in over a year. She stated she would be happy to have her son's children live with them and to care for the children. Mrs. Maud Brock, a sister-in-law of Mrs. Ditch, testified that she often visited the home of petitioner; that in her opinion it is an ideal home for children; and that she has never seen any drinking in the home. Mr. Stonerock, an employee of the Kansas City Terminal Railway Company and a friend of petitioner and his mother, testified that he visited the home of petitioner occasionally and that he never saw any drinking there; that petitioner has not missed a night's work during the past year; and that he never saw petitioner intoxicated.

The respondent, Mrs. J. V. Nelson, testified as follows: Respondent and her husband have been living on a farm in Howard County, Missouri since March, 1941. The farm is about five miles from Fayette. Respondent has no children of her own, but she has had the care of petitioner's children since May, 1945. She discovered the

condition of the boy, James, when he was a small baby and took him to Kansas City, Columbia, and other places in the state for physical examination and finally, in September, 1946, she took him to Mercy Hospital in Kansas City. At that time James was underdeveloped, he drooled, his head lolled backward, and he had little control over his arms and legs. The physicians at Mercy Hospital pronounced the boy's ailment to be cerebral palsy, and gave respondent instructions concerning his care. In compliance with such instructions respondent has taken the boy to Mercy Hospital for treatment numerous times since September, 1946. She had a wooden frame built in the home for training and developing the boy's limbs, and he receives physical therapy for an hour every evening. The afflicted child is now seven years of age; he does not drool; he walks with less involuntary action, and his condition has improved in all respects; but he still requires constant attention and medical treatment. With the assistance of the superintendent of schools at Fayette, the respondent made arrangements for a special home teacher for the boy. The child has made considerable progress under the guidance of this teacher whose salary is paid by the state. Respondent has made arrangements for him to continue with the same teacher. The girl, Darline, has been attending a public school in Fayette. Her grades are better than average.

Respondent further testified that petitioner came to her home intoxicated three or four times and that on these occasions he cursed and drank in the presence of the children; that she never attempted to prevent him from visiting the children except when he was drunk; that she always tried to make him feel at home, and that on two occasions he stayed over night in her home. Referring to petitioner's last trip to her home in June, 1950, respondent said that petitioner told her he had come to take the children away; that she did not know whether he was intoxicated or not; that she did not refuse to let him visit the children, as petitioner testified, but she did refuse permission to take the children away because she believed they were under the control of the probate court of Howard County. Respondent further stated that she is willing to care for the children and would be happy to have them remain with her; and that if the children remain in her custody she will gladly permit their father to visit them at all reasonable times.

Several witnesses testified that they had known respondent and her family for many years and visited in her home; that she had no children of her own, but had reared the children of several relatives; that she had always borne a good reputation; and that she had taken excellent care of petitioner's children.

As heretofore stated, the children's mother testified that she remarried after obtaining a divorce from petitioner, and that she now resides in California with her second husband. She also testified

that she was reared by her maternal aunt, the respondent herein; that she suffers from heart trouble and is unable to care for the children; that her son, James, improved a great deal under the care of respondent; and it is her desire that the children remain in the custody of respondent.

Under our law a parent has a natural right to the custody of his minor child and, in a contest between a parent and a third person, the parent's right to custody should never be denied unless it is made manifest to the court that the parent claiming custody "for some reason, is unfit or incompetent to take charge of it, or unless the welfare of the child itself, for some special or extraordinary reason, demands a different disposition of it, at the hands of the court." In the Matter of Berenice S. Scarritt, 76 Mo. 565, 582; State ex rel. Crockett v. Ellison, 271 Mo. 416, 427, 196 S. W. 1140, 1142; Edwards v. Engledorf, (Mo. App.), 192 S. W. 2d 31, 33; In re Steele, 107 Mo. App. 567, 81 S. W. 1182. In determining the custody of a child "the fitness of the respective parties, their adaptability to the task of caring for the child, their ability to control and direct it, the age, sex, health, and surroundings of the home, * * * are all to be considered." Schuster v. Schuster, 64 S. W. 2d 134, 135. With these considerations in mind we turn to the facts of the instant case.

As to the fitness of petitioner to have custody of his children, the evidence does not warrant us in holding that he is a fit and competent person to have such custody. We have attempted to state his testimony as accurately as possible, but we cannot by means of words depict his peculiar demeanor as a witness. Although it does not appear in the foregoing statement of his testimony, he was a recalcitrant witness even on direct examination. His testimony concerning several matters not mentioned herein was self-contradictory and incredible. It is apparent to the court that he is a highly nervous, unstable person. As stated, his testimony tended to show that up to June, 1950, at least, he paid respondent "about" one hundred dollars a month for the support of his children. He admitted, however, that he visited the children but once a year after they were placed in respondent's home. His excuse for not visiting them oftener is not convincing. The testimony of petitioner and that of his mother concerning their use of intoxicating beverages cannot be reconciled. Petitioner stated that he drank intoxicating beverages at home and in taverns, and that his mother did likewise on occasions. He denied, however, that he drank excessively. On the other hand, petitioner's mother, after hearing the testimony of her son, took the witness stand and stated that petitioner did not drink in the home, and that she did not drink intoxicating beverages of any kind. Respondent stated that on three or four occasions petitioner came to her home intoxicated and drank and cursed in the presence of his children;

and that she never denied him the right to visit his children except when he was drunk. All of this was denied by petitioner. Having heard and observed the petitioner and respondent, we feel constrained to resolve the questions presented by their conflicting testimony in favor of respondent. It should be stated, however, that the court is mindful of the rule that a parent's right to the custody of his children "must be determined with respect to the present, existing conditions, with evidence of past conditions being material only to the extent that they clarify and cast light on the existing conditions." Ex parte De Castro, 190 S. W. 2d l. c. 959.

The evidence tends to show that petitioner has not missed a night's work in over a year. Even granting that he does not drink intoxicating beverages to excess, there are other factors to be considered in the case. It is our opinion that petitioner is temperamentally unfit to take charge of his children at this time. He may not be at fault in this respect. The evidence is that he was discharged from the army after serving five months, and thereafter he was a patient in a veterans hospital for a time. His son, now just seven years of age, is a victim of cerebral palsy. The acceptance of the custody of the child is a serious undertaking involving grave responsibilities, and on it depends the health and happiness of the little boy. Were we to award the custody of the children to petitioner, he would necessarily be away from his children most of every night, and no doubt he would have to sleep during a part of every day. His work requires that. Under these circumstances his mother would have the personal responsibility for the care of the children. Even if he worked in the daytime, the result would be the same. The evidence is that petitioner's mother has been married three times, and she has not seen her third husband since they separated in 1942. She may be a good mother, but it is evident that her domestic life has not been ideal. In any event, she has had no experience in caring for a spastic child. She certainly cannot be expected to understand and care for the afflicted boy as well as respondent who has had much experience during the years; nor can petitioner be expected to do so. In view of the special and extraordinary circumstances here involved, we are unwilling at this time to entrust the custody of the little boy to petitioner, feeling it would be an unwarranted experiment if not a tragic error. The girl, Darline, is almost thirteen years of age. The evidence is that the children are devoted to each other and that Darline assists in the care of her brother. It would not be to the best interests of the children to separate them.

We are satisfied from all the testimony, and respondent's demeanor as a witness, that she is a person of good moral character, a patient, kind, and unselfish woman, having deeply at heart the welfare and proper rearing of these children. During the years when petitioner and his former wife, by their own admissions, were either unwilling

or unable to care for the children, respondent proved her ability to train and educate the children. Through her efforts the afflicted child received proper treatment at her home as well as at Mercy Hospital, and he has a special teacher whose salary is paid by the state. Darline attends a public school and she is doing well. Because of respondent's experience and her understanding of the special needs of the children she is eminently qualified to care for them. They are undoubtedly in good hands. Mrs. Hortense Keller, the mother of the children, is not a party to this proceeding. According to her testimony, she suffers from heart trouble and is unable to care for the children. In view of all the evidence in this case, we conclude that the welfare of the children, at this time, requires that they remain in the custody of respondent. This court has the power to accompany the award of custody with such reasonable additional provisions touching the custody and control of the children as it deems proper, Mayo v. Mayo (Mo. App.), 221 S. W. 2d 504, 507; but the court is without authority in this proceeding to make a money award for the support and maintenance of the children. Ferguson v. Ferguson, 36 Mo. 197; 116 A.L.R. 699; 25 Amer. Jur. sec. 81, p. 206.

For the reasons stated, the petition should be denied and the custody of the children awarded to respondent. Despite petitioner's shortcomings we believe he loves his children. He should have an opportunity to become better acquainted with them, and to secure their love and affection, and they should not be deprived of his love and affection. This can only be secured by association. Accordingly, respondent should keep petitioner fully advised as to the place of residence of the children; and petitioner should be granted the privilege of visiting his children at their place of residence, or at some other place to be agreed upon by respondent and petitioner, such visits to be at convenient hours and not oftener than once a week, and at such times as not to interfere with the education or health of the children. At no time on the occasion of such visits should petitioner permit himself to be under the influence of intoxicating liquor. *Sperry, C.*, concurs.

PER CURIAM:—The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The petition is denied, and respondent is awarded the custody of Darline Leona Daugherty and James Earl Daugherty; respondent is ordered to keep petitioner fully advised as to the place of residence of said children; and petitioner is granted the privilege of visiting his said children at their place of residence, or at some other place to be agreed upon by respondent and petitioner, such visits to be at convenient hours and not oftener than once a week, and at such times as not to interfere with the education or health of said children. At no time on the occasion of such visits shall petitioner permit himself to be under the influence of intoxicating liquor. All concur.