Alfred F. BURGO, Plaintiff,

v.

Carrie N. BURGO, Defendant.

No. 6895–A.

District Court, Alaska
First Division, Juneau.
April 4, 1957.

Mildred R. Hermann, Juneau, Alaska, for plaintiff.

M. E. Monagle (of Robertson, Monagle & Eastaugh), Juneau, Alaska, for defendant.

KELLY, District Judge.

This is an action for divorce brought by the husband wherein he charges desertion on the part of the defendant and asks for the dissolution of their marriage, a decree of absolute divorce, and such orders as the Court may see fit in regard to the support and custody of the adopted son, Alfred Burgo, Jr.

Defendant's answer, which is not under oath, denies the desertion and alleges that both parties were extremely anxious to adopt the minor child in question but could not get permission to do so unless they agreed to raise the child in some other town than Juneau, where the child's natural mother resided with several other of her children.

The facts show that the parties were married in Juneau, Alaska, on January 26, 1950, and legally adopted a child, Alfred F. Burgo, Jr., in Juneau. The child, who was born on April 12, 1950, was given to the parties hereto about a month after birth by its natural mother who signed consent (plaintiff's exhibit No. 6) to adoption by the parties hereto on July 11, 1950. Her husband, who was not the child's father, also signed such consent on July 31, 1950. A welfare report dated June 30, 1951, and signed by Mrs. Sadie F. Billis, District Representa-

tive, was filed with the U. S. Commissioner, which stated in pertinent parts as follows:

"Mr. and Mrs. Burgo were married in Juneau on January 25, 1950. At the present time Mrs. Burgo and Patrick are residing at 1512 East Coastal Highway, Wilmington, California. A report from the Department of Social Welfare of California states that the home is located in a semi-industrial area and is very modest. It fronts on the boulevard, which is a busy highway. At the rear, however, there is a large yard which is enclosed. The Burgos are buying this home, and since it is a frame bungalow with a small living room and bedroom, they are planning on making additions."

"The Worker had no doubt that Mrs. Burgo is devoted to the child and he seems to be happy with her and responsive."

"Mr. Burgo is willing that the Welfare Agency in California continue to supervise his home for a longer period of time after he returns to live with his wife."

"Mr. and Mrs. Burgo prefer to have the adoption completed in Juneau in view of the fact that they have already paid the lawyer's fee and that you are familiar with the situation."

Judgment and decree of adoption was entered by U. S. Commissioner Gordon Gray July 13, 1951 (plaintiff's exhibit No. 5). The court file on the adoption proceedings was incorporated in the record by reference.

The facts further reveal that the defendant apparently sold some property in Ketchikan and with the minor child went to California early in 1951, where defendant purchased a home for the parties, near Wilmington, California, on March 9, 1951; that the home was purchased in the names of Alfred Burgo and Carrie Burgo, husband and wife, as evidenced by the deed, which was introduced in evidence as defendant's exhibit A.

Plaintiff sent defendant an average of $80 per month during the first year she lived in California and has sent various other sums at different times thereafter (see plaintiff's exhibits Nos. 1, 2, and 3).

The parties owned a home in Juneau and the testimony reveals that there was some difficulty regarding the sale of this home to the Plywood Company, whose property adjoined, for the reason that the defendant demanded an exorbitant amount as her share, but after considerable bickering it was finally agreed to sell the home for $4,500 and divide the money equally between the parties. This occurred in the fall of 1952. In December of 1952, the plaintiff visited the defendant in California and it is his testimony that he lived with her and the child and that he worked for two months in San Pedro, California, and then for some reason not apparent from the evidence, he desired the family to return to Alaska, and when defendant refused, according to his testimony, he left and in three weeks in San Francisco spent his share of the money received from the sale of the Juneau home, $2,250 plus what he had earned in the two months working in San Pedro. It is his claim that defendant, in refusing to return to Alaska, was guilty of desertion. He also testified that after his return he quit writing her letters and refused to open and read letters she sent him. His testimony does not reveal that he ever provided her with funds with which to return to Juneau and in September of 1953 he began this action.

■ On the witness stand the plaintiff stated that he desired very much to have the custody of the child; that he could care for the child and when the child was not in school and he was busy at his work as a longshoreman he would hire some one to care for him. The natural mother of this adopted child was called as a witness and she testified that she had agreed to the adoption because she knew the plaintiff. She has been married twice and has had eight children, four of whom have been adopted out, and her testimony was to the effect that she was told by the Welfare Department officials in Juneau that the Burgos promised to keep the child in Juneau so that she, the natural mother, could visit the child when she desired. The former United States Commissioner who handled this adoption testified as to the circumstances surrounding it to the best of his memory but he did state positively that it was the usual policy of the authorities having to do with adoptions to require that the child being adopted live in a different community from that of the natural mother. This, of course, is the recognized general practice and it is common knowledge that in most agencies handling adoptions the natural mother does not even know who adopts the child or where the child is.

A certified copy of the consent of the natural mother was introduced in evidence (plaintiff's exhibit No. 6) and her testimony and this consent which she signed reveals that although she was at the time married, the child was not a result of that union.

When the plaintiff went to California in December of 1952 he apparently intended to stay, as he obtained work in San Pedro, but later changed his mind and wanted the whole family to return to Juneau.

There is no evidence that he ever provided a home here or made provisions to bring his wife and child here and it is evident the Welfare officials in both California and Juneau felt that the child was receiving excellent care in California and it is undoubtedly better for the child to be raised away from Juneau, which is the home of his natural mother. Pictures of the boy (defendant's exhibit B) taken in June of 1953 when he was a little over three years old show an apparently well-cared for child in a very happy mood.

The defendant in her answer prays only for a divorce from bed and board and that she be declared to be the sole and only owner of the property in the joint names of the parties in California; she

asks likewise for the sole and exclusive care, custody and control of the minor child and that plaintiff be required to pay the sum of $100 per month for support and education of said child, and for her costs and attorney fees.

Plaintiff's 1955 and 1956 income tax returns (plaintiff's exhibit No. 4) show gross earnings of $3,718.83 for 1955 and $3,144.30 for 1956. He has no other assets or income except a 10% veterans disability compensation allowance amounting to about $17 a month.

The defendant's answer charges, facts which, had they been substantiated by testimony at the hearing, might have entitled her to a decree. The testimony at the hearing indicated that the charges made were possibly true, but in the absence of defendant's testimony this Court does not feel justified in awarding a decree to the defendant.

■ It seems pretty clear to this Court from the facts known and reasonable inferences to be drawn therefrom, that the parties intended, upon the adoption of this child, to leave Juneau. The defendant sold property she owned in Ketchikan and purchased property in the name of both parties in California. Thereafter the plaintiff entered into negotiations and finally sold the property the parties owned in Juneau and divided the proceeds with the defendant. The plaintiff later went to California and obtained employment there and then something happened. After a few months he decided to take the family back to Juneau and according to his testimony, the defendant refused to come, and it is this refusal which he charges amounts to desertion. His conduct immediately following this alleged desertion was not very exemplary. By his own admissions on the witness stand he proceeded to go on a three-week spree in San Francisco where he spent not only his earnings for the two months he worked in San Pedro but also the residue of his share of the receipts from the sale of the Juneau property. By this conduct he reveals an instability and unsteadiness which

precludes this Court from entertaining any prayer that he be awarded custody of the child.

■ Counsel for plaintiff at the trial of the case and in plaintiff's brief raised the claim of lack of jurisdiction of this court in three particulars:

(1) Although the defendant herein had filed an answer and had asked for a decree of divorce from bed and board, that she had not filed a cross-complaint and had not submitted any testimony or appeared in court personally, and therefore the court could grant no relief asked by the defendant.

The document entitled "Defendant's Answer" closed that pleading with a prayer that the divorce filed by plaintiff be dismissed; that she be granted a divorce from bed and board; that she be decreed to be the sole and only owner of the real property standing in the joint names of plaintiff and defendant in California; that she be granted the sole and exclusive custody of the minor child; that plaintiff be required to pay defendant the sum of $100 each month for the support of the child, together with costs and attorney fees of defendant in the action.

This Court feels that by the filing of this Answer and the appearance of her counsel throughout the trial, cross-examining witnesses, arguing points of law, that the defendant has submitted herself to the jurisdiction of this court for all purposes and that the plaintiff cannot complain that this court of equity having once acquired jurisdiction of the parties and of the subject matter of the suit, should not retain and exercise that jurisdiction until the equities of all the parties are determined.

The case of Sterl v. Sterl, 2 Ill.App. 223; 89 A.L.R. 1205, seems to have disposed of this question as follows:

"In this case the jurisdiction of the court is invoked by the appellee, he having, as he had a legal right to do, filed his bill against appellant, praying relief and summoning the appellant into the court. When she

is thus brought in, and, having responded to the claims of the appellee by answering his bill of complaint, being as it were, then forced into the court, submits herself to its jurisdiction, and asks the court to grant to her certain equitable rights, to which she claims to be entitled, *then it is that the appellee challenges the jurisdiction of the court to grant to her any equitable rights, but continues to clamor for his. This position is unconscionable and indefensible upon the principles of equity.* \* \* \* " (Emphasis supplied.) Plaintiff brought this suit against the defendant and thus brought her into court. She came into court by filing her Answer and is thereby subject to the jurisdiction of this court in all respects. Davis v. Davis, 1938, 305 U.S. 32, 59 S. Ct. 3, 83 L.Ed. 26.

■ (2) Plaintiff's second contention is that the court is without power to grant defendant's prayer for the custody of the child, contending, since the child is domiciled with the mother in California, that this domicile being outside of the jurisdiction of this court, no order can be entered herein as to the custody.

This Court feels that this contention is without merit; the court having proper jurisdiction over the parties hereto, the custody of the child is a proper matter for this court's consideration herein. Anderson v. Anderson, 74 W.Va. 124, 81 S.E. 706. Stephens v. Stephens, 53 Idaho 427, 24 P.2d 52.

■ (3) The third question raised by counsel for plaintiff is that this court has no jurisdiction over the disposal of real property located in another state:

With this contention of plaintiff, in its general application, we are inclined to agree; however, in the brief which is filed by plaintiff's counsel it is pointed out that plaintiff is willing to deed his share of the California property to the wife but has been advised against this action by counsel "unless and until some consideration is given him for defendant's attorney fees and costs."

■ It is hardly proper for the Court to consider bargaining rights in this connection. The equities of the situation are the concern of the Court and this Court finds that plaintiff, having no money invested in the California property whatsoever, has no equitable interest therein and that he should, prior to the entry of the decree herein and prior to the dismissal of the accompanying Reciprocal Support action pending in this court, execute a quitclaim deed to this property to the defendant herein.

■ I find that while the defendant, in carrying out the desires of the Welfare Department in Juneau, acted properly in taking the child to California and establishing a home there, when the plaintiff demanded that she return with him to Alaska her refusal to do so technically may be deemed desertion and therefore decree of divorce will be granted to the plaintiff.

No alimony for the defendant's support and maintenance will be awarded.

The child, being of tender years and being well cared for where now situated, will be awarded to the defendant herein, with rights of visitation in the plaintiff; and the plaintiff may have the custody of said child for one month during the summer vacations providing he in advance furnishes the cost of round trip transportation. The plaintiff will pay the sum of $65 per month to the Clerk of the Court for the support of Alfred Burgo, Jr., the adopted child of the parties hereto.

Defendant will be awarded $325 attorney fees but will be allowed no other costs. Plaintiff will not recover costs.

Decree in accordance with this opinion may be presented.