[No. 4277. Decided July 5, 1902.]

STATE OF WASHINGTON, · *Respondent,* v. SAMUEL ARMSTRONG RHOADES, *Appellant.*

DIVORCE — JURISDICTION TO AWARD CUSTODY OF CHILDREN.

Where a court in a suit for divorce obtained personal jurisdiction of the parties it thereby acquired jurisdiction of the status constituted by the relation between the parents and their minor children, when the children were within the territorial limits of the court at the time the action was commenced, and their subsequent departure therefrom would not deprive the court of jurisdiction to fix the custody of the children.

KIDNAPPING — CONSENT OF CHILD.

In a prosecution for kidnapping, under Bal. Code, § 7050, which provides that "if any person maliciously, forcibly, or fraudulently lead, take, decoy, or entice away any child under the age of twelve years, with the intent to detain or conceal such child from its parent, guardian, or other person having the lawful charge of such child, he shall be punished," the consent of the child would not constitute a defense.

Appeal from Superior Court, Pierce County.—Hon. WILLIAM H. SNELL, Judge. Affirmed.

*Leo & Cass* and *Marshall K. Snell,* for appellant.

*Fremont Campbell, Charles O.· Bates* and *Walter M. Harvey,* for the State.

The opinion of the court was delivered by

HADLEY, J.—Appellant was charged with the crime of kidnapping. The information alleges that on or about the 28th day of August, 1901, in Pierce county, state of Washington, the appellant "unlawfully, feloniously, maliciously, forcibly and fraudulently did lead, take, decoy and entice away Clair Millmore Rhoades, a child under the age of twelve years, to-wit: of the age of ten years, with the intent then and there to detain and conceal the said Clair Millmore Rhoades from Emma Rhoades, the mother of said Clair Millmore Rhoades, and the person who then and there had the lawful charge of said Claire Millmore Rhoades, and the said defendant Samuel Armstrong Rhoades did so as aforesaid then and there unlawfully, feloniously, maliciously, forcibly, and fraudulently lead, take, decoy, and entice away the said Clair Millmore Rhoades, against the will and without the consent of the said Emma Rhoades." A trial was had before a jury, which resulted in a verdict of guilty. Motions for new trial and in arrest of judgment were denied, and judgment was entered upon the verdict of the jury, by which appellant was sentenced to serve a term of fourteen months' imprisonment in the state penitentiary. From said judgment this appeal was taken.

The appellant and Emma Rhoades, mentioned in the above quotation from the information, were formerly husband and wife, and the child, Clair Millmore Rhoades, is their son. On the 26th day of March, 1898, said Emma Rhoades procured a decree of divorce from appellant in the superior court of the city and county of San Francisco, state of California. By the terms of that decree the custody of the minor children of the said marriage was awarded to the mother, said Emma Rhoades. There

were two children,—the boy above named, and a sister
about two years older. Appellant appeared in the divorce
suit and filed an answer to the complaint. If he was not
personally present in the court room at the time of the
trial, he was represented by counsel at the trial, and was
personally in the court house where the trial was held,
and while it was going on. A few days before the decree
of divorce was rendered, but pending the progress of that
case, the mother sent the little children to friends who
reside in Alaska. Soon after the decree was entered the
mother joined the children in Alaska, and from that time
took personal care and charge of them, supporting them
by her own labor and exertions. Thereafter she came
with the children to Seattle to reside, and engaged in the
business of keeping a small store for the sale of Indian
curios gathered from Alaska and elsewhere. Prior to
the 28th day of August, 1901, she sent the boy, Clair
Millmore Rhoades, to board for a time with a Mrs.
Derville, who resided at Steilacoom, in said Pierce county.
The children had each been sent there on occasions before
for their vacations. On the date above named the appel-
lant went to Steilacoom, and, through the assistance of
a boy whom he paid to discover for him the whereabouts
of the child, learned that he was playing with some other
children on the beach, not far away. This boy whose
assistance he sought testified that appellant told him he
would like to get the child away without saying anything
about it to the people with whom he boarded; that appel-
lant gave this boy one dollar, and told him to buy some
candy and give to the child, and tell him his papa was
there and wanted to see him; that he bought ten cents'
worth of candy, and went in search of the child, and
found him upon the beach with other children, but con-
cluded not to give him the candy or make any attempt

to get him away, and simply returned and told appellant where the child was, at the same time offering to return the ninety cents of the one dollar remaining, which appellant declined to accept. Appellant then went to the beach and found the child. Mrs. Derville testified as follows:

"A. The children were bathing on the beach and my little girl ran up and said that Clair's papa had come and wished to take him away, and I thought the child was mistaken, but she said 'No,' so Mr. Rhoades came up and introduced himself, with the children. Q. That was the defendant here, Mr. Rhoades, this gentleman sitting over here? A. Yes, and I asked Clair if that was his father, and the answer the boy made was, 'Yes, that is my papa.' Mr. Rhoades said he had seen Mrs. Rhoades a few days previous in Tacoma, and she said he could go to Seattle to visit the children, which he done, and he only found the girl, but not the boy; that the boy she said was in Alaska with his uncle, but would be down in a few days, and he says, 'Here I find him in Steilacoom.' I told Mr. Rhoades that the boy was well cared for, and if he would leave him a few days—I knew nothing of the case—but, no, he would like to take him then, at once. I told him there was a board bill. 'That didn't matter,' he said. He paid me the board bill and took the boy. I asked him as a gentleman before he left me if he would take that boy to his mother, and he said, 'I give you my word, I will take that boy to his mother in Seattle to prove to her that she has deceived me.' Q. That was the promise he gave you at the time? A. That was the promise that he gave me. Q. Did Clair leave at that time? A. Yes, I dressed the little fellow, and I packed up his things, and he left with his father."

Appellant had arranged for a horse and buggy and driver, and immediately left Steilacoom with the child. They were driven to Tacoma, where they remained for about an hour, when the driver proceeded with them to Orting. Appellant afterwards took the child aboard a

train going east. They proceeded to Pendleton, Oregon, where they were joined by the present wife of appellant. They then traveled with a team to Boise, Idaho, and afterwards went to Salt Lake, Utah, thence to Pueblo, Colorado, and from there to Lamar, from which place the child was brought back by an officer. The child himself testified:

"Q. Clair, when your father stated he would take you to Seattle, who did he say he was going to take you to? A. To my mother. Q. You thought you were going to your mother? A. Yes, sir."

The record of the testimony is voluminous as to the history and relations of appellant and his former wife, but other facts necessary to the determination of this case will be referred to in the discussion hereafter.

The statute defining the crime with which appellant is charged is found in § 7050, Bal. Code, and is as follows:

"If any person maliciously, forcibly, or fraudulently lead, take, decoy, or entice away any child under the age of twelve years, with the intent to detain or conceal such child from its parent, guardian, or other person having the lawful charge of such child, he shall be punished by imprisonment in the penitentiary not more than ten years, or by a fine not exceeding one thousand dollars, or by both such fine and imprisonment."

As we have seen, the custody of this child was awarded the mother by the court in California, and, if that decree was effective, she was at the time he was taken by appellant, in the language of the statute, the "person having the lawful charge of such child." It is assigned as error that the court instructed the jury that the California court which granted the decree of divorce had jurisdiction to fix therein or thereby the custody of the boy, Clair Millmore Rhoades. In order that this claim of error may be more clear, it is necessary to refer to more of the facts

shown by the record: Appellant, during his life, has engaged in the several occupations of barber, harness-maker, and veterinary surgeon. In the prosecution of these several lines of business, and particularly the latter, he has traveled much over the country, going from state to state. He first met his former wife in San Francisco, where they were then both residing, and were both acquainted with the city and people. After their marriage they resided at times in different places in other states. They, however, returned to San Francisco, and were living together there when appellant learned that his father, who resided in an eastern state, was ill. He took the little boy and went east, leaving his wife and the little girl in San Francisco, with no money or means of support. He was gone for a number of months, and meantime sent the little boy back to his mother, as she desired. During his absence he contributed practically nothing for the support of the mother and children, and the mother supported them and herself by working as cashier in a restaurant. After a long absence he returned, with but a few dollars of money, and besought his wife to quit her employment in the restaurant and live with him. She declined to quit the place and sacrifice her small earnings while he was without both money and employment. Being displeased at her refusal, he, without her knowledge or consent, secured both the children, and went with them to the state of Colorado. She testified that he wrote her after he left that he now had the children, and she had left all she had when she married him. He concealed the whereabouts of himself and children from her and she meantime supported herself by her own exertions. After some months she discovered the location of the children in Colorado, and went and secured them without

his knowledge, and brought them back to San Francisco. Soon after she returned she began her suit for divorce, and asked for the custody of the children. Appellant was served with summons without the state, but went to San Francisco, and, as heretofore said, appeared in the action. Under these circumstances, it is urged by appellant that as the head of the family he had the right to fix the domicile of the family, and that, as he was in the state of Colorado at the time the divorce suit was begun, the children having been removed from that state without his consent, they were therefore residents of that state, and the California court had not jurisdiction to fix their custody. Passing the question whether the aforesaid facts were sufficient to constitute the state of Colorado the domicile of the children, it, in any event, appears that the effectiveness of the decree of divorce itself is not disputed in so far as it purports to dissolve the bonds of matrimony theretofore existing between appellant and the mother of the children; that appellant regarded it as a valid decree is evidenced by the fact that he has since remarried. The court must, therefore, have had jurisdiction to render the decree. The appellant actually and personally submitted himself to the jurisdiction. Having jurisdiction of the parents to the extent of being empowered to dissolve the marital ties, did the court have power to determine who should be the lawful custodian of the children? It is manifest that the adjudication of that matter was all-important to the children, by reason of their tender years. They were unable to act or choose for themselves. Their parents were henceforth to be separated, and it became imperative that some one should be lawfully charged with their custody. A divorce suit may be either a proceeding *in rem* or *in personam*. Where the defendant is personally served within the state, or appears in a suit com-

menced by constructive service, it is a proceeding *in personam;* but if he is a non-resident, constructively served, only, and no appearance has been made, the proceeding is *in rem.* 9 Am. & Eng. Enc. Law (2d ed.), p. 745. By the voluntary appearance of the appellant the action in the California court became one *in personam.* The relation of parent and child, like that of marriage, is a status. Bishop, Marriage, Divorce & Separation, § 1189.

The court, having acquired personal jurisdiction of the parties and of the status constituted by the marriage relation, also acquired jurisdiction of the status constituted by the relation between the parents and minor children. That status was a part of the subject-matter of the divorce suit, and the court had jurisdiction of both the persons and subject-matter. The children were with their mother, one of their lawful custodians, and within the territorial limits of the California court, when the action was commenced. They remained there until a few days before the decree was entered. The jurisdiction had attached to the persons and to the whole subject-matter of the suit, and a physical departure of the children from the immediate territorial jurisdiction of the court did not prevent the court from retaining jurisdiction to determine the whole subject-matter of the case. *Baily v. Schrader,* 34 Ind. 260. We, therefore, conclude that the California court had power to fix the custody of the children with the mother, and that the trial court did not err in so instructing the jury.

It is next assigned that the court erred in giving to the jury the following instruction:

"The court further instructs you that if you should find from the evidence that on or about the date charged in the information the defendant went to Steilacoom, in Pierce county, Washington,—the place where the said

child, Clair Millmore Rhoades, then lawfully was,—and then and there represented to the said child and to the person then having his lawful custody and control that he desired and that it was his purpose and intent to take the said child from said place and from said custody and convey him to Seattle, to his mother, Emma Rhoades, and that, having so obtained the possession of the person of the said child under such representations, he then took the said child out of the state of Washington with the intent to detain and conceal said child from its guardian or other person having the lawful charge of said child, then he is guilty of the crime charged in the information in this case, and you should find him guilty, notwithstanding the fact that you should further find that after such taking, and after learning the true intent and purpose of the defendant, the said child, Clair Millmore Rhoades, consented thereto, and was willing to go with the defendant."

It is urged that if the child consented to go, the appellant is not guilty of a crime. The instruction is, however, based upon the theory that appellant procured possession of the child from his lawful custodian by false and fraudulent representations as to his purpose, and took him with intenttoconcealhim from the person lawfully entitled to his custody. The instruction seems to come well within the statute heretofore set out. The consent or want of consent of a child under twelve years of age seems to be immaterial. The offense consists in the taking with intent to conceal from parent or guardian or other person having lawful charge of the child. The theory of the legislature evidently was that a child under twelve years of age is incapable of giving consent under such circumstances, and that its own welfare and that of society requires that the child's consent shall be immaterial in a prosecution of this character. It was so held in *Gravett v. State,* 74 Ga. 191, where the charge was similar to the one here. The

same principle is also declared in *State v. Farrar*, 41 N. H. 53, and *Commonwealth v. Nickerson*, 5 Allen, 518.

There are two other assignments of error, but each is based upon the court's refusal to give certain instructions requested by appellant. The questions raised by the requested instructions have, however, already been hereinbefore discussed. The evidence was amply sufficient for the jury to find that the mother of the child was his lawful custodian, and that appellant by fraudulent means procured possession of him with intent to detain and conceal him from such lawful custodian. It was to meet such an offense that the statute was created.

We find no material error, and the judgment is affirmed.

REAVIS, C. J., and FULLERTON, ANDERS, DUNBAR, MOUNT, and WHITE, JJ., concur.