17944

Carol JACKSON, Respondent, v. Robert L. JACKSON, Appellant
(126 S. E. (2d) 855)

*Messrs. Harvey & Harvey,* of Beaufort, *for Appellant,*

*Keith M. Kinard, Esq.,* of Walterboro, *for Respondent,*

July 18, 1962.

Legge, Acting Justice.

Defendant in an action for divorce appeals from a circuit court order adjudging him in contempt for his failure to obey a previous order directing him to deliver the infant daughter of the parties into the temporary custody of its maternal grandparents.

In the divorce action Judge Bussey issued, on March 21, 1961, an *ex parte* order awarding the custody of the child during the pendency of the action to the plaintiff, its mother, and directing the defendant to place the child in plaintiff's custody forthwith. On March 30, this order, together with the summons and complaint, were served upon the defendant at the United States Marine Corps Air Station in Beaufort, South Carolina, where he was stationed. On the same day, March 30, 1961, upon the plaintiff's petition, Judge Bussey issued his order directing the defendant to show cause before him on April 3, 1961, why he should not be adjudged in contempt for having failed to deliver the child into plaintiff's custody. At the hearing on April 3, 1961, the defendant did not appear in person, but was represented by counsel; and as the result of the hearing Judge Bussey issued his order dated April 3, 1961, ordering the defendant to deliver the child within ten days into the custody of the plaintiff's parents pending the further order of the court. On April 21, 1961, the defendant having failed to comply with the order of April 3, Judge Bussey issued an order requiring him to appear in person before the Honorable William L. Rhodes, Jr., Resident Judge of the Fourteenth Judicial Circuit, on April 25, 1961, to show cause why he should not be adjudged

in contempt therefor. From Judge Rhodes' order adjudging him in contempt and sentencing him to imprisonment in the Beaufort County jail for a period of ten days unless he should sooner purge himself of contempt by delivery of the child in accordance with Judge Bussey's order of April 3, 1961, this appeal is taken.

At the hearing before Judge Rhodes appellant was present in person with his attorney, the Honorable W. Brantley Harvey, of the Beaufort bar. Respondent was represented by Mr. Keith M. Kinard, of the Walterboro bar. No oral testimony was offered, but a written return to the order to show cause was submitted to the court by appellant's counsel, together with certain exhibits, which, without objection, were admitted into the record. To these documents we shall now refer.

Appellant's return alleged in substance:

That he is and was at the time of his marriage to the respondent a citizen of Illinois, his presence in South Carolina for the past three years being as a member of the United States Marine Corps;

That during said three-year period he lived in barracks at the Marine Corps Air Station until his marriage; after his marriage they lived for some three months in Beaufort with her parents; and thereafter he lived at the Air Station, where he had quarters for himself and her;

That prior to the institution by respondent of the action for divorce, he and she had on numerous occasions discussed the matter of their divorce and had agreed that he was to have custody of the child and she was to be given a sum of money to enable her to study cosmetology;

That about March 1, 1961, respondent rented an apartment outside of the Air Station, and on March 17 she began to move her personal possessions there, for that purpose borrowing appellant's automobile and leaving the child at the home of a neighbor;

That on the morning of March 18, respondent having not returned to the neighbor's home to get the child, and having conducted herself improperly during the previous evening, appellant decided to apply for leave and take the child to his mother's home in Illinois, which he did;

That after his return to Beaufort from this trip he was served with the summons and complaint and a petition and order in the divorce action, the order (dated March 21) directing him to place the child in respondent's custody forthwith, which he was unable to do because the child was in Illinois;

That later, by order dated March 30, he was directed to show cause before Judge Bussey on April 3 why he should not be adjudged in contempt for having failed to obey the order of March 21;

That upon the return day, April 3, appellant's counsel appeared before Judge Bussey, and as the result of the hearing Judge Bussey issued his order dated April 3, 1961, directing appellant to deliver the child to respondent's parents within ten days.

The remainder of the return we quote verbatim:

"VII. That although this defendant did not feel that the court had jurisdiction to grant the custody of the infant, Theresa Sue Jackson, to Mr. and Mrs. Frank Canene because the infant was beyond the borders of this State and had been so before the institution of this action, he agreed upon the advice of his counsel to bring the infant back to South Carolina, and made application to his commanding officer for leave to enable him to go to Illinois to get his daughter, but that leave was refused as will appear by the statement of Major Wilbourn Waller, this defendant's commanding officer, hereto attached.

"VIII. That since this defendant could not get leave to go to Illinois and return the infant to South Carolina, he requested his mother, Mrs. Ruby L. Jackson to bring his daughter to South Carolina and she promised to bring the

infant, but the infant was exposed to measles and Mrs. Jackson asked that the hearing on the matter be postponed until April 20th or April 24th, and that she would have the infant here at that time. Attached to this Return and made a part thereof is a letter from Mrs. Jackson to Mr. Felix B. Greene, Jr., the counsel for this defendant, together with certificate of Dr. Dan B. Foley.

. "IX. That on or about the 17th day of April, 1961, this defendant received a telephone call from his mother in which she indicated that she was not going to bring the infant to South Carolina, although she did not say so positively; and defendant immediately reported that fact to his attorney, Mr. Felix B. Greene, Jr.

"X. That on yesterday, the 24th day of April, 1961, this defendant received by registered mail from one Eldon M. Durr, Attorney at Law, Edwardsville, Illinois, an exemplified copy of Letters of Guardianship issued by the Probate Court of the County of Madison, State of Illinois, appointing Ruby L. Jackson, defendant's mother, as guardian for the infant, Theresa Sue Jackson. That since receipt of the exemplified copy of the Letters of Guardianship above mentioned, he has again telephoned his mother requesting her to bring the infant, and she refuses either to bring the infant or let the infant come to South Carolina.

. "Wherefore, this defendant having shown that the infant, Theresa Sue Jackson, was legally domiciled in the State of Illinois at and before the commencement of this action, and that it is beyond the power of the defendant to obey the order of the court, and it further appearing that the court was without jurisdiction to issue the order directing that this defendant deliver the infant, Theresa Sue Jackson, to Mr. and Mrs. Frank Canene, this defendant prays that the citation and contempt be discharged and the defendant exonerated of any contempt." .

. "Attached to the return were the following:

. 1. A statement by Major Waller to the effect that because of shortage of available military personnel he would

not grant leave to Sergeant Robert L. Jackson to go to Illinois or elsewhere beyond the local liberty area after April 1, 1961.

2. A letter, sent on April 8, 1961, by Mrs. Ruby L. Jackson to Mr. Felix B. Greene, Jr., then attorney for the appellant, enclosing a doctor's certificate to the effect that the child had been exposed to measles and should not travel before April 15. In this letter Mrs. Jackson requests that Mr. Greene try to have the hearing set for either April 20 or April 24, and states: "I will guarantee that the child and I will be there."

The exhibits offered by appellant at the hearing before Judge Rhodes were:

1. The following letter, dated April 18, 1961, from Mr. Felix B. Greene, Jr., then appellant's counsel, to Mr. Keith M. Kinard, respondent's counsel, showing copy sent to Judge Bussey:

"Dear Mr. Kinard:

"I am writing to you because I believe that Sgt. Jackson will be unable to comply with the order of the court directing him to turn the custody of his daughter over to Mr. and Mrs. Cenene. I had a conversation yesterday morning with his mother in Illinois and she stated that she would make arrangements to have the child in Beaufort in my office on the 20th. Late yesterday afternoon Sgt. Jackson came in and advised that his mother was unable to make the trip to South Carolina by herself and that the party who was to accompany her was unable to come with her. He further stated that he did not now believe that his mother intended to bring the child to Beaufort at any time.

"As I told you previously, Sgt. Jackson has applied for leave and the Marine Corps has denied this leave. He apparently has been advised that the South Carolina court has no jurisdiction over the child in Illinois.

"I had told Jackson's mother that unless she returned the child to South Carolina I did not see how I could continue

·to represent him. I certainly do not feel that I can come into court and ask to set aside the orders of the court when my client has not complied with the most important order. I turned over to Jackson the various papers which were con-.cerned with his case. Since then he has talked to several other ·lawyers in Beaufort. If I find that one of them is representing him I will be glad to let you know.

"Very truly yours,

"Felix B. Greene, Jr."

2. An exemplified copy of Letters of Guardianship issued by the Probate Court of Madison County, Illinois, under date April 20, 1961, appointing Ruby L. Jackson guardian of the person of Theresa Sue Jackson, a minor.

Two question are presented:

1. Did Judge Bussey have jurisdiction to issue the order of April 3?

2. If that order was within the court's jurisdiction, was it error on the part of Judge Rhodes, upon the record before him, to adjudge the appellant in contempt for disobeying it?

The first of these questions is a complex one, as will appear from the following pertinent and undisputed facts:

(1) Appellant's legal domicile is in Illinois.

(2) Appellant is a non-commissioned officer of the United ·States Marine Corps, and his place of actual residence for the . last three years has been Beaufort County, South Carolina, , where he has been stationed in the. course of his military service. Although there is no direct evidence on the point, the length of his service suggests that. he has chosen a mil-.itary career. ·

(3) At some time during·his service in Beaufort County ·appellant married the respondent, a resident of ·South Carolina. The infant whose custody is involved is the child of that .marriage.

(4) Beaufort County. has. been..the· matrimonial domicile of the parties ever since their marriage.

(5) On March 21, when the summons and complaint in the divorce action were filed and the original order for custody pendente lite was issued (with which order this appeal is not concerned), the child was in Illinois, where it had been taken by appellant two or three days before; it was not within the State of South Carolina when the summons, complaint, and order of March 21 were served upon appellant; and it has not been within this state since then.

(6) The lower court's jurisdiction of the divorce action, and of the parties to it, is not questioned.

(7) Following the hearing before Judge Bussey on April 3, appellant agreed to bring the child back from Illinois as directed by the order of that date.

It is noted that the order of April 3 here challenged did not purport to adjudicate the issue of custody on its merits; it related only to custody *pendente lite*. But the question of the court's jurisdiction to issue that order is inextricably involved with that of jurisdiction of the merits, for it would be neither logical nor fair to the parties to conclude that a court without jurisdiction to determine the issue of custody on the merits would have jurisdiction to order custody *pendente lite*.

The first question, then, may be phrased more broadly as follows: Where, in an action for divorce, both parties being residents of the state of the forum and before the court in person, there arises the issue of custody of their minor child, is the court without jurisdiction of that issue and its judgment thereabout a nullity at the commencement of the action and continuously thereafter during its pendency the child is neither present nor legally domiciled within that state?

The domicile of a minor child being generally that of its father where the parents have not been divorced or legally separated, 17A *Am. Jur.*, Domicile, Section 66; *Cribbs v. Floyd*, 188 S. C. 443, 199 S. E. 677, we shall assume for the purposes of this discussion that Illinois was the state of legal domicile of the child.

There is surprising lack of uniformity among the decisions of the several states as to whether it is essential to the court's jurisdiction to award custody of a child in a divorce action that the child be present within the state or have its legal domicile, as distinguished from actual residence, therein. The Restatement, Conflict of Laws, Section 117, declares without qualification that a state can exercise through its courts jurisdiction to determine the custody of a child only if the child's domicile is within that state. See also 17A Am. Jur., Divorce and Separation, Section 811. Some courts have held domicile so essential to jurisdiction that power to adjudicate custody is lacking if the child, though present in the state, is domiciled elsewhere. *Daugherty v. Nelson,* 241 Mo. App. 121, 234 S. W. (2d) 353. Others have held that where the child resides within the state of the forum, the fact that its domicile is elsewhere does not render the courts of that state powerless to regulate its custody. *Finlay v. Finlay,* 240 N. Y. 429, 148 N. E. 624, 40 A. L. R. 937. Others view the issue of custody as *in rem,* the child being the *res,* and hold that the child must be within the jurisdiction of the court. *Coble v. Coble,* 229 N. C. 81, 47 S. E. (2d) 798. Still others hold that where the child's parents are personally before the court jurisdiction to adjudicate custody exists although the child resides, or is domiciled, in another state. *State v. Rhoades,* 29 Wash. 61, 69 P. 389; *Breene v. Breene,* 51 Colo. 342, 117 P. 1000; *Anderson v. Anderson,* 74 W. Va. 124, 81 S. E. 706; *Stephens v. Stephens,* 53 Idaho 427, 24 P. (2d) 52. Numerous cases illustrative of the several theories bearing on the issue of jurisdiction to award custody of a child that is without the state are collected and discussed in the following annotations: 4 A. L. R. (2d) 25 *et seq.;* 9 A. L. R. (2d) 434 *et seq.*

The majority opinion in *Sampsell v. Superior Court,* 32 Cal. (2d) 763, 197 P. (2d) 739, contains an interesting discussion of the several theories upon which the courts have approached the jurisdiction problems of child custody. We quote from it as follows:

"Several theories have been advanced with respect to the correct bases for jurisdiction over the subject matter of a child custody proceeding. According to one theory jurisdiction over children's custody is based on in personam jurisdiction over the children's parents. *Anderson v. Anderson*, 74 W. Va. 124, 126, 81 S. E. 706. Another theory regards the question of custody as simply one of status and as such subject to the control of the courts of the state where the child is domiciled. Rest. Conflicts, 117, 148; see Goodrich, Custody of Chilren, 7 Corn. L.Q. 1, 2; 2 Beale, Conflict of Laws, p. 717; *Dorman v. Friendly*, 146 Fla. 732, 740, 1 So. (2d) 734. A third theory requires the child to be physically present within the state, on the ground that the basic problem before the court is to determine what the best interest of the child is, and the court most qualified to do so is the one having access to the child. See Stumberg, Children and Conflict of Laws, 8 Univ. Chic. L. Rev. 42, 55-56; Stumberg, Conflict of Laws, p. 299; *Sheehy v. Sheehy*, 88 N. H. 223, 225, 186 A. 1, 107 A.L.R. 635.

\* \* \* \* \* \*

"It is apparent that each of the foregoing theories, if regarded as exclusive tests of jurisdiction, ignores important considerations underlying the other theories. It would, however, be no solution of the problem to require all these elements to be present before a court could acquire jurisdiction. Unfortunately cases will arise where one or two elements are lacking, and some court must have jurisdiction in the interest of the child to make proper provision for its custody. The principal difficulty with each of the theories as exclusive tests of jurisdiction is the difficulty inherent in any attempt to apply hard and fast rules of *res judicata* and conflict of laws to the problem of child custody. The principal cases and most of the secondary authorities have been concerned less with the question whether a court has jurisdiction than with the other question whether the courts of other states are bound by the particular decision, when that jurisdiction has been exercised. The respective theories are based on the

assumption that in order to achieve finality in this matter one court at one given time must have an exclusive right to determine issue. 'From a standpoint of expediency and of achieving socially desirable ends, there seems to be only one argument in favor of confining jurisdiction to a single state; that it will produce stability and discourage the crossing of state lines to avoid the effect of unpalatable custody decrees.' (Stansbury, Custody and Maintenance Law Across State Lines, 10 Law and Contemp. Prob. 819, 830) It is doubtful, however, whether the best interest of the child, the paramount consideration in custody proceedings, is served thereby.

"There is authority for the proposition that courts of two or more states may have concurrent jurisdiction over the custody of a child. *Finlay v. Finlay*, 240 N. Y. 429, 431, 148 N. E. 624, 40 A.L.R. 937; *Goldsmith v. Salkey*, 131 Tex. 139, 145-147, 112 S. W. (2d) 165, 116 A.L.R. 1293; *Stafford v. Stafford*, 287 Ky. 804, 806, 155 S. W. (2d) 220. In the interest of the child, there is no reason why the State where the child is actually living may not have jurisdiction to act to protect the child's welfare, and there is likewise no reason why any other states should not also have jurisdiction.

* * * * *

"Thus, if the child is living in one state but is domiciled in another, the courts of both states may have jurisdiction over the question of its custody. It does not follow, however, that the courts of both states will exercise that jurisdiction and reach conflicting results. The courts of one state may determine that the other state has a more substantial interest in the child and leave the matter to be settled there. On the other hand, if the jurisdiction of one state has been exercised over the child, there is no reason why, if the welfare of the particular child is a matter of real concern to the courts of another state, those courts may not also have jurisdiction, which might be exercised in the interest of the child 'with respectful consideration to the prior determination of other

courts similarly situated.' Stansbury, 10 Law and Contemp. Problems, *supra* at 830-831. See *Foster v. Foster,* 8 Cal. (2d) 719, 726, 68 P. (2d) 719; *Titcomb v. Superior Court, supra,* 220 Cal. 34, 39, 29 P. (2d) 206. In any event, there is no reason why courts of one state should not be able to 'assume with confidence that the courts of the other jurisdiction will act with wisdom and sincerity in all matters pertaining to the welfare of this child.' *Miller v. Schneider,* Tex. Civ. App., 170 S. W. (2d) 301, 303."

The author of the annotation in 9 A. L. R. (2d) 434, discussing the view expressed in the Restatement, that only the state of the child's domicile may adjudicate its custody, says, at page 439:

"The rationale of this position seems to be that custody is a matter of status and that the state of domicil is the one to properly determine it. Its weakness, in this writer's opinion, is that custody, unlike questions of divorce, does not fit well into the concept of status, as the court is not creating or dissolving a legal relationship, but is making a determination as to which of several contesting parties has the best claim to the child. However, more important from a practical point of view is the objection that the rules relating to domicil of an infant are frequently unrealistic, giving in extreme cases jurisdiction to a court within the territorial limits of which the child has never lived."

That the issue of child custody in divorce cases is incident and subsidiary to the principal issue of divorce is suggested by the provision of Section 20-115 of the 1952 Code that "in any action for divorce from the bonds of matrimony the court may at any stage of the cause * * * make such orders touching the care, custody and maintenance of the children of the marriage * * * as from the circumstances of the parties and the nature of the case and the best spiritual as well as other interests of the children may be fit, equitable, and just."

If jurisdiction to award custody of the minor child of parties to a divorce action were dependent upon domicile, as

distinguished from actual residence, of the child within the state, the court having jurisdiction of the divorce could never make a valid custody award in any case where the parent whose domicile determines that of the child is domiciled in another state, though both parents and the child actually reside in the state of the forum and both parents submit the issue of custody to the court. Such an anomalous situation would frequently arise where the husband is a member of the armed forces, legally domiciled elsewhere, and the child may never have set foot upon the soil of its "home state."

We do not view the issue of custody there as *in rem*, requiring the presence of the child within the jurisdiction; nor do we consider it one of status, requiring that the child be legally domiciled in South Carolina. In our view, where both parents are residents of the state and personally present before a court having jurisdiction of the primary issue of their divorce, that court has also jurisdiction, in its concern for the welfare of their child, to adjudicate the child's custody, though it be absent. Cf. *Shaw v. Shaw,* 114 S. C. 300, 103 S. E. 526. So far as concerns the operation of the custody order upon the parent to whom it is directed, the technical residence of the child would seem unimportant, and we do not rest our decision in the present case on the child's residence in this state; but it is implicit in the record here that the sudden removal of the child to Illinois, without the knowledge of the respondent, just before the divorce proceeding was filed, did not effect a *bona fide* change of its residence from South Carolina, where it had been living since its birth and where both of its parents still reside.

Apart from the abstract theories and principles that we have discussed, it seems to us, in the light of the facts disclosed by the record here, that simple justice demands that the respondent be heard in this action on the issue of whether or not she is a proper person to have the custody, either exclusive or divided, of her infant daughter, and that she should not be denied that right by reason of the fact that appellant removed the child from this state a day or so before the summons and complaint in this action were filed.

The parties to the divorce action being both residents of South Carolina and before the court in person, it is our opinion that the court was not without jurisdiction to adjudicate the issue of their child's custody; and we so hold.

Appellant contends that his return to the show cause order, and the exhibits presented therewith, being uncontroverted, should have been accepted as true and at all events were sufficient to exonerate him of contempt. Two principles are here involved. The first is that as a general rule where the contemnor is unable, without fault on his part, to obey an order of the court, he is not to be held in contempt, 12 Am. Jur., Contempt, Section 72. And this is so because contempt generally involves intent, *Ibid.,* Section 2, being, as we said in *State v. Goff*, 228 S. C. 17, 88 S. E. (2d) 788, 52 A. L. R. (2d) 1292, "subjective and not objective." The second is that although judgment of contempt should be imposed sparingly, determination of the issue is within the trial court's discretion, and its decision will not be disturbed in the absence of plain abuse of discretion, *Fagan v. Timmons,* 224 S. C. 286, 78 S. E. (2d) 628.

The fact that the evidence offered by appellant was not contradicted by direct evidence did not render it undisputed or necessarily to be taken as true. *State v. Brown,* 205 S. C. 514, 32 S. E. ((2d) 825. Its inherent probability, its credibility, the inferences reasonably to be drawn from it in the light of all of the circumstances of the case, were matters to be considered by the circuit judge. In his well-considered order from which this appeal comes Judge Rhodes states his inference from the evidence as follows:

"Viewing the entire record and sequence of events in this matter, I cannot escape the conclusion that there exists here a studied design to thwart the order of Judge Bussey. The Return does not convince me that the defendant is not a party to such design. It is certainly inferably from the record

that the defendant and his mother are on good terms. Under normal conditions, as here indicated, there is no closer bond between humans than that of the relationship of a mother and her son. It is my opinion that the defendant has not made a *bona fide* effort to comply with the order of Judge Bussey, and that had he made such effort the child would now be in the custody of the persons in whose hands Judge Bussey has decreed the welfare of the child can be best subserved."

In our opinion Judge Rhodes' evaluation of the evidence was a reasonable one. Abuse of discretion has not been shown.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.