23621

Walter MILGROOM, Respondent v. James McDANIEL, Appellant.

(416 S.E. (2d) 626)

Supreme Court

---

[6] *See Smith v. Smith*, 291 S.C. 420, 354 S.E. (2d) 36 (1987).

*David J. Gundling* of *Thompson, Henry, Gwin, Brittain & Stevens, P.A.,* Conway, *for appellant.*

*Fred B. Newby* of *Newby and Pridgen,* Myrtle Beach, *for respondent.*

Heard Mar. 11, 1992; Decided Apr. 6, 1992.

Reh. Den. May 6, 1992.

CHANDLER, Justice:

James McDaniel (McDaniel) appeals a Circuit Court Order holding him in contempt.

We affirm.

## FACTS

In 1986, Respondent Walter Milgroom (Milgroom) obtained a $41,000 judgment against McDaniel. Unable to satisfy the judgment, he instituted supplemental proceedings to discover McDaniel's assets. Circuit Court referred the matter to the Honorable John Breeden, Master-in-Equity (Master), for a final Order, with direct appeal to this Court.

The Master issued his Order of Examination requiring McDaniel to produce copies of all corporate stocks owned by him. At a hearing on July 10, 1990,[1] McDaniel admitted ownership of stock, valued at approximately $500,000, in a Virginia corporation known as Wagonwork; however, he claimed the stock was in possession of one Forry Laucks, secretary and director of another of McDaniel's corporations. When McDaniel gave assurance that he would obtain the stock certificates from Laucks, upon Laucks' completion of a move from California to Detroit, the Master scheduled a subsequent hearing for three weeks later, on July 31.

On July 31, McDaniel advised that the stocks were packed with the personal belongings of Laucks, who had not yet completed his move to Detroit. While he was uncertain as to Laucks' exact whereabouts, McDaniel had no doubt that Laucks would call him again soon and would, promptly, mail the stocks. Although the Master expressed his displeasure that he was "getting the run-around," he, nevertheless, granted McDaniel until August 13, to produce the stock.

Despite his earlier assurances, McDaniel appeared at the August 13 hearing without the stocks. His explanation: Laucks was unwilling to turn over the stocks because of their having been previously pledged as security for a loan to McDaniel. This represented the first disclosure by McDaniel that the stock was in any way encumbered by Laucks.

Shortly prior to the August 13 hearing, the Master received a telephone call from Laucks, made at McDaniel's request, advising that the stocks were, indeed, pledged to him and were in his possession. At the hearing, the Master, referring to Laucks' phone call, understandably stated to McDaniel: "Now that's either the truth or not the truth. And if it's the truth, you've misled me."

[1] A hearing originally scheduled for May 17, 1990, was cancelled when McDaniel admitted himself to the hospital on May 16, 1990.

Thereafter, the Master issued a Report to Circuit Court, notwithstanding the Order of Reference directed that he render final judgment. In declining to issue such an Order, he cited a potential conflict of interest, and returned the matter to Circuit Court for independent findings. His Report did recommend that McDaniel be held in contempt for his collusion with Laucks in willfully refusing to produce the stock.

At a hearing on October 9 before Circuit Judge David F. McInnis, McDaniel asserted that the stock wasn't "worth ten cents." When he was encouraged by Judge McInnis to sign legal paperwork to obtain the stocks, McDaniel declined. At the conclusion of the hearing, Judge McInnis sentenced McDaniel to six months for contempt, subject to being purged by production of the stocks.

On November 30, Judge McInnis conducted a final hearing. In denying a motion to reconsider the contempt,[2] he advised McDaniel he would be released "the minute you comply with what the Court indicates to be a good faith effort to obtain this stock."

## ISSUES

1. Did the Order of Reference deprive Circuit Court of jurisdiction to find McDaniel in contempt?
2. Did the evidence support a finding of contempt?

## DISCUSSION

### I. JURISDICTION

McDaniel contends the Order of Reference, vesting the Master with authority to enter final judgment and providing for direct appeal to this Court, divested Circuit Court of jurisdiction. We disagree.

S.C. Code Ann. § 14-11-85 (Cum. Supp. 1991) provides:

(A) Appeal from *final judgments* entered by a master-in-equity are to the Circuit Court unless:
(1) the Circuit Court's order of reference provides for a direct appeal to the Supreme Court . . .

---

[2] McDaniel's petitions for habeas corpus and writ of mandamus were treated as motions for reconsideration.

(Emphasis supplied.) *See also Windham v. Sanders*, 287 S.C. 170, 337 S.E. (2d) 205 (1985) (authorizing direct appeal to this Court upon Master's final judgment when so directed in the Order of Reference).

Clearly, Judge Breeden's report did not constitute a final judgment from which an appeal to this Court would lie. Accordingly, jurisdiction remained in Circuit Court within the plain meaning of the statute.

We agree with Milgroom that adoption of McDaniel's view would preclude any final determination by either Circuit Court or this Court.

From a reading of the record, the Master's decision to forego a final Order in favor of returning the matter to Circuit Court is reasonable. In an effort to secure production of McDaniel's stock, the Master engaged in direct communication with Laucks, who advised that the certificates were in his possession. This involvement, with one who was obviously a critical participant in the litigation, understandably caused the Master to exercise his discretion in the manner in which he did.

Finally, it is clear that Judge McInnis reached his own findings only after conducting an independent hearing and review of the record.

Under the facts and circumstances here, we hold that the Master correctly returned the reference to Circuit Court.

## II. WILLFUL CONTEMPT

McDaniel next challenges the finding of contempt, alleging that Laucks' possession of the stock rendered impossible his compliance with the Order of Examination. We disagree.

"On appeal, a decision regarding contempt should be reversed only if it is without evidentiary support or the trial judge has abused his discretion." *Stone v. Reddix-Smalls*, 295 S.C. 514, 516, 369 S.E. (2d) 840 (1988).

"[A]s a general rule where the contemner is unable, without fault on his part, to obey an order of the court, he is not to be held in contempt. . . . And this is so because contempt generally involves intent . . . [which is] subjective and not objective." *Jackson v. Jackson*, 241 S.C. 1, 15, 126 S.E. (2d) 855, 863 (1962). In such proceedings, the inherent probability, credibil-

ity and inferences reasonably to be drawn from the evidence, in light of all of the circumstances of the case, are matters for the trial judge. *Id.*

Here the evidence, on its face, patently supports a finding of contempt. McDaniel was afforded liberal opportunity to produce the certificates, extending for a period of six months during which five separate hearings were conducted. On each succeeding occasion he proffered varying explanations, inconsistent with one another, for his failure to produce the stock. His conduct was egregious, and demonstrated a subterfuge with Laucks, amounting to a deliberate circumvention of the Order of Examination.

The language of this Court in *Jackson, supra,* is appropriate here:

> Viewing the entire record and sequence of events in this matter, I cannot escape the conclusion that there exists here a studied design to thwart the order . . . The Return does not convince me that the defendant is not a party to such design. . . . It is my opinion that the defendant has not made a *bona fide* effort to comply with the order . . .

241 S.C. at 15-16, 126 S.E. (2d) at 863.

Affirmed.

HARWELL, C.J., and FINNEY, TOAL and MOORE, JJ., concur.